No. 25017.

THE PEOPLE OF THE STATE OF COLORADO *v.* PORTIS G. WELCH.

(483 P.2d 218)

Decided April 5, 1971.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, L. JAMES ARTHUR, Assistant, for The People of the State of Colorado.

No appearance for attorney-respondent.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THREE formal complaints of misconduct were filed against the Attorney Respondent, Portis G. Welch, by the Attorney General with the Grievance Committee of this Court. Each of the complaints, together with citations, were served upon the Respondent by registered mail. No answers were filed by or on behalf of the Respondent, except that Respondent sent a letter to the Supreme Court two days before a scheduled hearing in which he offered to voluntarily surrender his license and consented to permanent disbarment as opposed to suspension. In this letter he further admitted "some culpability with respect to some, but not all, of the matters."

The Supreme Court did not consent to the voluntary surrender of the license and ordered the hearings to proceed. The case was presented by the Attorney General and the Respondent did not appear either in person or by counsel. Evidence was presented concerning four separate and unrelated transactions, and we will summarize the findings of fact made by the Hearings Committee with respect to each.

I. *The Davis Matter.*

Richard Davis was held in the Arapahoe County Jail with respect to certain criminal charges in September of 1968. Respondent was retained by Davis to represent him for a fee of $1,000. Davis had, at the time he was arrested, $209.90, which he turned over to the Respondent for the purpose of having Respondent give it to Davis'

wife. Respondent told Davis that he had given the money to Mrs. Davis, but in fact, it was never delivered to her.

Shortly thereafter, Mrs. Davis gave the Respondent $1,410 and later an additional $1,000. Mr. Davis' half-brother also gave Respondent an additional $575. The purpose for which these funds were given was to pay Respondent's attorney's fee and to make certain installment payments which were due and owing by Mr. and Mrs. Davis.

Respondent assured Mr. and Mrs. Davis that the installment payments had been made, when, in fact, they were not made. Actually, the Respondent had converted the money to his own use. This conduct on the part of Respondent resulted in foreclosure and repossession of a home in Arizona, a pick-up truck and an automobile. It also resulted in the Davises having to pay installments on other bills which they assumed had already been paid by Respondent.

II. *Maurice Matter.*

Mrs. Shirley Maurice retained Respondent to commence divorce proceedings. She understood that she would only be charged with publication costs. She paid the Respondent $60 for the publication. Respondent represented that an action had been commenced, and in fact met Mrs. Maurice at the City and County Building of Denver and had her wait while he checked with the court. He then returned and informed her that the Judge was ill and that the case could not be heard. At that time, Mrs. Maurice paid the Respondent another $60. Actually, no divorce action was ever filed by the Respondent in this matter.

III. *Garvie Matter.*

On or about December 18, 1966, a Canadian barrister, one Lawrence Garvie, representing heirs, retained Respondent to handle the affairs of a decedent named Daniel McGinnis Farrer. Garvie wrote many letters to Respondent requesting progress reports, but received no reply. Finally, on May 22, 1967, Respondent mailed a letter to

Garvie enclosing documents which purported to be copies of an Inventory and of a Colorado Inheritance Tax Application.

On October 9, 1967, the Respondent informed Garvie by letter that the estate would be closed on November 7, 1967, and that the proceeds would be forwarded to Garvie's client. Garvie wrote several letters in November, December and February, requesting a progress report. He received no response.

On March 20, 1968, the Respondent wrote Garvie telling him that the estate would be completed on April 15, 1968. On October 16, 1968, Garvie received a wire that the estate had been probated and that distribution could be expected within one week.

Finally, on October 17, 1968, Garvie wrote another lawyer in Denver, authorizing him to investigate the matter and requesting his intercession with Respondent. The attorney attempted to contact Respondent, but had great difficulty in doing so. Finally, the attorney did encounter the Respondent and Respondent showed him a letter dated November 15, which purported to be a letter of transmittal to Garvie of the distribution checks. The original of the letter that Respondent showed the attorney was never received by Garvie nor were any checks. There is no record in any of the courts of the Denver metropolitan area of an estate under the name of the decedent, Daniel McGinnis Farrer. Moreover, no Inheritance Tax Application has ever been filed nor has any distribution of funds ever been made by the Respondent.

IV. *Hutton Matter.*

Mr. and Mrs. Wayne Hutton retained Respondent to represent their son who was held in jail in Littleton. The Huttons paid Respondent $1,000 as an attorney's fee. The Respondent neglected to return any telephone calls from Mr. Hutton. Mr. Hutton finally contacted several Judges and the District Attorney in Littleton and through their cooperation was finally successful in discussing the matter with the Respondent. Mr. Hutton complained to

the Respondent about his failure to keep him informed as to what was happening. The Respondent promised to keep in touch with the Huttons, but again failed to do so.

The findings of fact, as outlined above, are all supported by the record and show that the Respondent defrauded clients of monies entrusted to him, voluntarily represented that actions had been filed, wilfully misled Canadian solicitor Garvie as to the handling of an estate, and improperly and repeatedly neglected to answer telephone calls and legitimate letters of inquiry from his clients.

The public must be afforded protection from lawyers who accept the legal problems of their clients and then fail to dispose of them with dedication and dispatch; lawyers who convert clients' monies to their own use, as Respondent did here; and lawyers who so act as to show a calloused neglect of, and a lack of professional concern about, the problems of their clients, of which Respondent also was guilty here. The conduct of the Respondent has indeed been contrary to the highest standards of honesty, justice and morality as required of a duly licensed attorney.

It is therefore the order of this Court that the Respondent, Portis G. Welch, be and hereby is forthwith disbarred as an attorney, and his name be stricken from the roll of attorneys licensed to practice law in Colorado. He is further ordered to surrender his license forthwith.

Costs incurred in this action in the amount of $285.62 shall be paid by the Respondent to the Clerk of this Court within 60 days from the date this opinion is announced.