MR. JUSTICE KELLEY
delivered the opinion of the Court.
The respondent, Samuel P. King, was licensed to practice law by this court on October 6, 1961. This matter is here by reason of formal charges against respondent for violation of the Code of Professional Responsibility filed by the attorney general with The Grievance Committee of the Supreme Court of the State of Colorado.
The matter was heard by a three-member hearing panel of the grievance committee on (1) the complaint, (2) the respondent’s answer, (3) documentary evidence, and (4) the testimony of witnesses. The hearing committee made findings, conclusions and recommendations which were adopted by the grievance committee and may be summarized as follows:
COUNT I
The respondent, on December 28, 1973, was employed by one James C. Partch (Partch) to obtain a discharge in federal bankruptcy proceedings. The respondent received an advance of $300 to apply on his fee and expenses. On January 2, 1974, the respondent prepared the petition in bankruptcy and other preliminary papers, which were signed by Partch on January 8, 1974. The respondent failed and neglected to file the petition with the federal bankruptcy court until September 16, 1974.
During the nine-month interval, Partch’s wages were garnished by Household Finance Company to satisfy a judgment of $462.36, which judgment was one of the financial problems which Partch sought to alleviate by the bankruptcy proceedings.
When Partch informed respondent of the garnishments, he stated that he had “answers back from all creditors,” so that when the bankruptcy papers were filed Partch would be repaid by Household Finance Company. This did not occur. But for the respondent’s procrastination, Partch’s wages could not have been garnished.
COUNT II
The charges in Count II related to the use or misuse of funds of the law firm of Thompson, Ozman and King, or the firm of Ozman and King, of which respondent was a member.
The hearing committee found that the respondent was not authorized to sign checks drawn on the firm bank account, the signature of Thompson or Ozman being required. While Ozman was hospitalized, respondent secured his signature on twelve blank checks on the representation that the office secretary had requested Ozman’s signature. Respondent then used one of the checks to pay his personal account in the amount of $161.37 to Lewis Floral & Gift Shop. Respondent simultaneously entered on the check stub the amount of the check as $16.13.
*122 Between 1972 and 1974, respondent received directly approximately $6,700 of partnership fees, without the knowledge of his partners. These items were not entered in the partnership books. More specifically, the committee found:
1. On May 22, 1974, respondent drew the sum of $581.87 from the account of the Estate of Lindsey as and for attorney’s fees for services rendered to the Executor of said Estate, without disclosing said transaction to his partners, or making any accounting for said sum to the law firm until acknowledging the transaction during involuntary partnership dissolution November 25, 1974;
2. In May, 1974, Harley and Naomi Chandler, clients of the firm, issued their check in the amount of $37 as and for attorney’s fees earned by respondent as a member of the firm, to Samuel King, and respondent utilized said sum for his personal use without making any accounting therefor to the law firm, until acknowledging the transaction during involuntary partnership dissolution November 25, 1974;
3. On June 29, 1974, the firm of Thompson, Ozman and King issued a statement to Leota Corman for services rendered with regard to a collection matter and with regard to estate proceedings in the amount of $721.70. On July 23, 1974, Leota Corman paid $600 by check to Samuel King in payment of said account and respondent endorsed said check with his own name. On July 30, 1974, respondent caused said Leota Corman’s check to be deposited in the checking account of Samuel P. or Suzanne R. King. Respondent did not disclose said series of transactions to his partners or make any accounting therefor until acknowledging it during involuntary partnership dissolution November 25, 1974;
4. On August 28, 1974, Adeline Baucke, Administratrix of the Estate of Baucke, issued a check in the amount of $215 as and for an attorney’s fee for services rendered by Ozman and King to the Estate, to Samuel King. Respondent endorsed said check, but did not disclose said transaction to his partner or make any accounting therefor until acknowledging it during involuntary partnership dissolution November 25, 1974;
5. On October 2, 1974, a check was issued by the Administrator of the Gladys V. Pollard Estate payable to Ozman and King as and for attorney’s fees rendered to said Estate in the amount of $800. Respondent endorsed the name of Ozman and King upon said check, knowing that he had no authority to do so, and signed his own name thereto. Respondent did not disclose said transaction to his partner or make any accounting therefor until acknowledging it during involuntary partnership dissolution November 25, 1974.
The hearing committee made the following conclusions:
AS TO COUNT I
“1. The burden is upon the People to prove the allegations in the formal complaint by clear and convincing evidence, and this Committee *123 concludes that the evidence is undisputed that Respondent violated Disciplinary Rules DR6-101(A)(1) and DR6-101(A)(3), which provide that a lawyer shall not handle a legal matter he knows or should know that he is not competent to handle without associating with him a lawyer who is competent to handle it, and shall not neglect a legal matter entrusted to him.
“2. Respondent violated the cited Canons of Professional Responsibility, with regard to the handling of the Partch Bankruptcy matter in that he knowingly and intentionally misrepresented to his client that proper progress was being made with respect to the matter when in truth and in fact no such progress was being accomplished. Further, he failed to file a proper Petition in Bankruptcy and accompanying schedules in a timely manner. Although the Respondent may not have been competent in the area of bankruptcy matters, his client nevertheless suffered financial and personal detriment because of his gross negligence and perhaps also because of his failure to seek the help of other attorneys who were more knowledgeable in this field.
“3. This Committee finds the precedent authority of People v. Tobin, 169 Colo. 218, 454 P.2d 807, and People v. Welch, 174 Colo. 177, 483 P.2d 218, to be particularly persuading in reaching these conclusions.”
AS TO COUNT II
“1. The Committee concludes that Respondent has violated Disciplinary Rule 101-2A(4) and (6), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, or engage in any other conduct that adversely reflects on his fitness to practice law. The evidence presented by the People is undisputed, that Respondent was dishonest in his dealings with his partner by obtaining funds rightfully belonging to the partnership by subterfuges, knowing he had no right to the same and failing to account to the partnership for said funds until acknowledging the same during involuntary partnership dissolution November 25, 1974. Respondent’s silence impliedly acknowledges that he had used the funds so obtained for his own purposes. Respondent permitted a set-off to be made against his interest in the real estate owned by the law firm without objection. Respondent’s Answer does not deny the fact that he took law firm money for his own use without making an accounting to the law firm, but did account for the same after his partner proved his defalcations to him.
“These acts and omissions constitute conduct which reflects a flaw in the character of respondent which makes him untrustworthy, thus unfit to practice law. The Committee finds the precedent authority of People v. Murphy, 174 Colo. 182, 483 P.2d 224 persuasive in arriving at these conclusions.”
The committee concluded with the following findings: “Respondent consulted with another attorney (whose identity is not disclosed) with *124 regard to defense of this grievance, and tactics to be utilized at the hearing, but appeared pro se.
“Respondent did not make an opening statement. Respondent did not cross-examine witnesses. Respondent declined to take the stand in his own defense. Respondent declined to make an oral closing statement.
“Even though admonished by the Chairman as to the potential discipline which could follow as a result of the evidence and testimony taken, Respondent persisted in his demand that he be permitted to file only a written closing argument.”
The Committee, as discipline for the violations, recommended that respondent be disbarred and that the costs of the proceedings in the amount of $183.42 be taxed to respondent.
The respondent filed detailed exceptions to the committee’s report. The attorney general filed a motion to strike the exceptions because of respondent’s failure to comply with C.R.C.P. 252 B(2)(b), which provides:
“. . . which exceptions shall, within thirty days thereafter, be supplemented by filing with the Court such portions of the Hearings Panel’s records or the reporter’s transcript as he may deem necessary to enable the Court to pass upon his exceptions. . . .”
The respondent having failed to comply with the rule leaves us no alternative but to disregard the exceptions and to accept the findings of the hearing panel as true. The conclusions of the panel, adopted by the committee, logically follow from the facts.
The Code of Professional Responsibility, Canon 6, teaches that,
“Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle.” EC 6-1.
The concomitant disciplinary rule states:
“(a) A lawyer shall not:
“(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
“(2) Handle a legal matter without preparation adequate in the circumstances.
“(3) Neglect a legal matter entrusted to him.” DR 6-101.
The respondent violated every aspect of this disciplinary rule. In addition, his mishandling of the partnership funds manifested a lack of complete integrity. In sum, it is clear that the respondent was guilty of conduct contrary to the highest standards of honesty, justice and morality.
The public must be protected from lawyers who accept the legal problems of their clients and then fail to dispose of them with dedication *125 and dispatch and who display a calloused neglect of and a lack of professional concern for the problems of their clients. People v. Welch, 174 Colo. 177, 483 P.2d 218 (1971); People v. Tobin, 169 Colo. 218, 454 P.2d 807 (1969).
It is therefore the order of this court that the respondent, Samuel P. King, be and hereby is forthwith disbarred as an attorney, and his name be stricken from the roll of attorneys licensed to practice law in Colorado. He is further ordered to surrender his license forthwith.
Costs incurred in these proceedings in the amount of $183.42 shall be paid by the respondent to the clerk of this court within 90 days from the date this opinion is announced.