**The PEOPLE of the State of Colorado, Complainant,**

v.

**Thomas H. MAY, Attorney–Respondent.**

**No. 87SA262.**

Supreme Court of Colorado, En Banc.

Nov. 2, 1987.

Linda Donnelly, Disciplinary Pros., George S. Meyer, Deputy Disciplinary Pros., Denver, for complainant.

Thomas H. May, Denver, pro se.

ERICKSON, Justice.

In this disciplinary proceeding the Supreme Court Grievance Committee has recommended that the respondent, Thomas H. May, be suspended from the practice of law for six months and that he be assessed the cost of these proceedings. The hearing panel of the grievance committee filed extended findings of fact and conclusions of law with its recommendation. We accept and approve the recommendation of the grievance committee and order that Thomas H. May be suspended from the practice of law for six months from the date of the announcement of this opinion and that he pay the cost of these proceedings in the amount of $8,653.43.

I.

Thomas H. May was admitted to the bar of this court on April 14, 1964, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). Complaints were filed against the respondent for his professional misconduct in the representation of both Jerry R. Kurts and Ira Johnson.

II.

*The Jerry R. Kurts Complaint*

Jerry R. Kurts was tried and convicted by a jury of first-degree murder. The motion for a new trial filed by the respondent was denied. The respondent was then appointed as defense counsel for the purpose of perfecting an appeal on behalf of the defendant, Kurts. The disciplinary complaint against the respondent alleges professional misconduct by the respondent during the trial and in the handling of the appeal. At the conclusion of the hearing, the disciplinary prosecutor acknowledged that the evidence did not sustain the allegations of professional misconduct in the trial of the Kurts case. J. Gregory Walta, an expert witness for the disciplinary prosecutor, reviewed the record and expressed the opinion that May was guilty of no misconduct during the Kurts trial, but that he was guilty of professional misconduct in the handling of the Kurts appeal.

A notice of appeal was filed by the respondent on August 23, 1982, and on October 1, 1982, the following designation of record was filed: "The clerk shall include in the record on appeal: 1. The portions of

the record enumerated in C.A.R. 10(a), including motions, opinions, rulings, orders, verdicts, motion for new trial and ruling thereon."

Thereafter, on October 5, 1982, the respondent sought and obtained an extension of time to November 21, 1982, by informing the court that he was uncertain of what parts of the record would be necessary for the appeal. On November 18, 1982, the court reporter executed an affidavit which stated: "[D]ue to a backlog of transcripts ... and due to the lack of a coherent designation of record ... the transcript due on appeal ... cannot be completed prior to January 20, 1983." Attached to the affidavit was a request by the respondent that the extension be granted. The court reporter thereafter filed additional requests on February 23, 1983, and April 14, 1983, asserting that a comprehensive designation of record had not been filed.

On April 18, 1983, the clerk of the court of appeals advised the respondent of the affidavits filed by the court reporter and informed him that until a designation of the parties was filed with the court of appeals the matter could not be docketed nor could action be taken on the motions for extension of time. The respondent took no action and the court reporter filed further affidavits seeking extensions of time due to the failure of the respondent to file a comprehensive designation of record on appeal.

On December 16, 1983, the chief judge of the court of appeals issued an order to show cause which stated:

> From the affidavits filed herein by the court reporter, it appears that the record on appeal was due for filing with this Court on November 21, 1982, and the record on appeal has not been received by this Court, it is therefore ordered that the appellant shall show cause, if any he has, in writing on or before January 5, 1984, why this appeal should not be dismissed.

On January 5, 1984, the respondent filed a response to the order to show cause and stated that he had complied with the reporter's request for a more comprehensive designation of record and acknowledged his fault in the failure to process the appeal in a speedy and orderly manner. As a result, the court of appeals discharged its order to show cause and directed the respondent to facilitate the preparation of the record. On January 12, the respondent filed the following amended designation of record. "The Defendant requests the Clerk to prepare for transmission to the Court of Appeals in addition to the designation already requested, the following portions of the record: 1. Reporter's transcript of the entire trial and the Motion for New Trial and ruling thereon." C.A.R. 10(a), which was referred to in the respondent's original designation of record, includes the reporter's transcript.

The court reporter testified that he had advised the respondent more than a year before the amended designation of record that he needed greater clarity to prepare the record if he was going to obtain payment from the court. The delay occasioned by the respondent's failure to provide a clear and timely designation of record resulted in postponing the appeal for more than nine months.

While the appeal was pending, Kurts wrote the respondent on February 19, 1983, November 12, 1983, December 26, 1983, and on another occasion and obtained no reply. All of the letters reflected Kurts belief that the appeal was in progress. Despite the letters, the respondent did not reply to his client or report on the status of the appeal for a period of approximately fifteen months.

We agree with the finding of the hearing board that the respondent's conduct violated C.R.C.P. 241.6 and the following disciplinary rules in the Code of Professional Responsibility: DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule); DR 6–101(A)(2) (a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of his client); DR 7–101(A)(3) (a lawyer shall not prejudice or damage his client during the course of the professional rela-

tionship); and DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

The respondent's failure to take appropriate action on behalf of his client constituted gross negligence and violated C.R.C. P. 241.6(4), and DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objective of his client). *People v. Rice,* 708 P.2d 785 (Colo.1985). The respondent's neglect over a period of months cannot be considered to be less than willful, even when it is based only on inaction. *In re Jones,* 728 P.2d 311 (Colo.1986).[1] The respondent was also derelict in providing a client with inaccurate information regarding the legal matter entrusted to him. DR 6–101(A)(3). *People v. Witt,* 200 Colo. 522, 616 P.2d 139 (1980).[2] Even though Kurts conviction was upheld on appeal, that fact does not excuse the respondent's misconduct. *People v. Gibbons,* 685 P.2d 168 (Colo.1984). The respondent's delay and inaction was prejudicial to the administration of justice and violated DR 1–102(A)(5).[3]

## III.

### *The Ira Johnson Complaint*

On September 20, 1982, Ira Johnson, Jr. shot and killed Willie Reed in the parking lot of the Dahlia Shopping Center in Denver. Johnson was arrested and charged with first-degree murder. The respondent interviewed Johnson in the Denver County jail and was paid $2,500 as a retainer. In the course of his defense of Johnson, the respondent was late or failed to appear for court proceedings on a number of occasions. The hearing board has found the following instances of inexcusable failure to appear at proceedings in the Johnson case:

a. On January 3, 1983, May failed to appear at Johnson's arraignment without excuse. May explained to Johnson's wife that he forgot about the arraignment.

b. When it became apparent that the deputy coroner, George Thomas, M.D., would be unavailable for trial, the prosecutor filed a motion to take Dr. Thomas' deposition pursuant to Crim.P. 15. May agreed to a setting of August 8, 1983, for this purpose, but on that date May failed to appear. After waiting a time, the Court recessed the deposition until that afternoon, yet May again failed to appear. The deposition was taken the following day. At the grievance trial, May testified he had had a DUI trial in Longmont which he could not get continued.

3. On November 23, 1983, May failed to appear for hearing on the Defendant's Motion for New Trial. This date had been fixed on November 3 when May was present and with his concurrence. The Hearing Board notes that although the Motion for New Trial was due on October 27, May did not file the Motion until November 3, however the Trial Court noted the lateness and accepted the Motion. May testified he was unconcerned about the lateness because the Defendant had filed his own *pro se* Motion for New Trial timely. May testified that he was not at the November 23 hearing because he was in trial in Littleton.

d. On December 14, 1983, May appeared late and was reprimanded by the Trial Court on the record for failing to notify the Court that he would be detained.

We agree with the hearing board in its finding that the respondent's failure to ap-

1. ABA Model Rule 1.3 imposes an affirmative duty on the lawyer to attend to a client's matters with reasonable promptness. *People v. King,* 191 Colo. 120, 550 P.2d 848 (1976), is in accord with this view.

2. ABA Model Rule 1.4 requires that a lawyer keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. ABA Defense Function Standard 4–3.8 provides: "The lawyer has a duty to keep the client informed of the developments in the case and the progress of preparing the defense."

3. *See Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664 (2d Cir.1980).

pear establishes a pattern of inattention, neglect, and delay that is without excuse. In each instance the respondent was aware at the time the settings were made of any potential conflict and agreed to the dates and then failed to appear.

The basic facts surrounding the shooting were never developed or investigated by the respondent. The respondent knew that his client and the decedent were acquainted and both were C.B. radio enthusiasts who belonged to a loose-knit group that hung out at an area at 33rd and Dahlia which they called "the outside office." Johnson and his wife both told respondent that they were not present at the time that Reed was shot and that Johnson had not shot Reed. Later, when Johnson came in contact with Linford Brazzle in the jail, he learned that Brazzle had seen the altercation and shooting and would testify that both Johnson and his wife were present and that both Reed and Johnson had weapons. Johnson told the respondent and the respondent confirmed this by visiting Brazzle at the Denver County jail. However, he took no further steps to investigate other than to talk to the detectives about where Johnson's car had been and about the search that had been made for a shotgun.

The respondent, at the grievance hearing, claimed that he had the right to rely on the discovery provided by the prosecution and that he had no obligation to interview witnesses. He admitted that he had not interviewed or caused Charles Hysaw to be properly served with a subpoena, even though he knew Hysaw. Reed had also told Hysaw that if he caught Johnson without a gun, that he would "kick his butt." The respondent had a subpoena issued and told Johnson's wife to serve him. Hysaw did not appear and the respondent unsuccessfully claimed that the absence of Hysaw was grounds for a new trial. Hysaw first asserted that he did not appear because he was not properly served, but testified before the grievance committee that he was served by the sheriff.

The respondent also failed to interview Sharon Reed, the divorced wife of the decedent, who had obtained a restraining order against Reed based on his carrying a gun and threatening to kill his wife and those opposing him. Mrs. Johnson discovered the affidavit in the Reed divorce file without any assistance from the respondent. The respondent also did not interview Robert Gipson, who could have refuted prosecution testimony that Johnson had threatened Reed in Gipson's presence. The respondent left most of the investigation to the defendant's wife. We have found that decisionmaking and the resolution of tactical judgments lie with the lawyer and cannot be delegated to a lay person without depriving the defendant of effective assistance of counsel. *People v. Herrera*, 188 Colo. 403, 534 P.2d 1199 (1975).

ABA Defense Function Standard 4–4.1 provides:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

I ABA Standards for Criminal Justice, Defense Function § 4–4.1 (1986); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the circumstances of this case, respondent's inadequate investigation amounted to unprofessional conduct.

In addition to his failure to properly interview witnesses, respondent failed to inspect the prosecution's physical evidence until the time of trial. He also failed to either tender self-defense instructions on the concept of apparent necessity or to clarify an instruction that retreat to the wall was not necessary. It is also remarkable that the respondent in his closing argument tried to persuade the jury that no proof existed that Johnson was the one who had committed the crime after John-

son had testified that he shot Reed in self-defense.

We agree with the hearing board's finding that the respondent's conduct in the defense of Johnson violates C.R.C.P. 241.6 and the disciplinary rules of the Code of Professional Responsibility, to-wit, DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule); DR 6–101(A)(2) (a lawyer shall not handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him); DR 7–101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of his client); DR 7–101(A)(3) (a lawyer shall not prejudice or damage his client during the course of the professional relationship); and DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

In determining the proper sanction, we are guided by the ABA Standards for Imposing Lawyer Sanctions and recognize that the respondent has no previous disciplinary record.

Standard 4.42 of the ABA Standards for Imposing Lawyer Sanctions provides some guidance:

Suspension is generally appropriate when:

a. A lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

b. A lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Of the ten possible aggravating factors set forth in 9.22 of the Standards, the Hearing Board finds that four are present in this case, namely:

a. A pattern of misconduct;

b. Multiple offenses;

c. Refusal to acknowledge wrongful nature of conduct;

d. Vulnerability of victim.

Of the thirteen possible mitigating factors set forth in 9.32 of the Standards, the Hearing Board finds that two are present in this case, namely:

a. Absence of a prior disciplinary record;

b. Absence of a dishonest or selfish motive.

The hearing board recommended that the respondent be suspended from the practice of law for six months and that he be assessed the costs of these proceedings. We agree with the recommendation and order that the respondent be suspended from the practice of law for six months from the date of this opinion, and that he pay the cost of these proceedings in the amount of $8,653.43 within ninety days to the Colorado Supreme Court Grievance Committee, 600 17th Street, Suite 510S, Denver, Colorado 80202.