The PEOPLE of the State of
Colorado, Complainant,

v.

William Joseph BARNTHOUSE,
Attorney–Respondent.

No. 88SA243.

Supreme Court of Colorado,
En Banc.

May 30, 1989.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

William Joseph Barnthouse, pro se.

ERICKSON, Justice, delivered the Opinion of the Court.

A disciplinary complaint was filed with the Grievance Committee charging the respondent, William Joseph Barnthouse, with unprofessional conduct for acts that he committed in his hotly contested dissolution of marriage proceeding. The hearing panel of the Grievance Committee unanimously approved the hearing board's findings of fact and the recommendation that the respondent be suspended for one year and one day, be required to show that he is emotionally and physically fit to practice law prior to being reinstated, and that he pay the costs of the disciplinary proceedings in the amount of $1,645.34. As an option, the hearing board recommended that the respondent be permitted to resume the practice of law at the end of eight months without the necessity of reinstatement proceedings provided that the respondent complied with certain conditions and agreed to undergo mental health counseling.

We adopt and approve the findings of the Grievance Committee, but we reject the option provided by the hearing panel. We order that the respondent be suspended from the practice of law for one year and one day, and that he be required to show prior to readmission that he is emotionally and physically fit to practice law. He is also ordered to pay the costs of these proceedings within sixty days.

I.

The respondent, William Joseph Barnthouse, was admitted to the bar of this court on October 25, 1976, and is subject to the jurisdiction of this court and the Grievance Committee. C.R.C.P. 241.1(b). Prior to this proceeding, the respondent's discipli-

nary record was unblemished. The respondent's unprofessional conduct is directly tied to his disagreements with his wife and his efforts to contest custody, maintenance, support, and property settlement motions and court orders entered during the dissolution of marriage proceedings. The transcript of the proceedings in this domestic relations case exceeds fifteen volumes. Despite the fact that a substantial part of the record before the hearing panel of the Grievance Committee consisted of the transcript, pleadings, and record in the dissolution proceedings, additional pleadings and other materials were submitted to both buttress and defend the allegations in the disciplinary complaint. Commencing with the disputes in the dissolution of marriage proceedings and continuing through the disciplinary proceedings, the respondent has been represented by a number of different lawyers and in some instances has appeared as his own counsel.

The respondent was convinced that the trial court erred in a number of rulings in the dissolution of marriage proceedings, and filed a seventy-five page motion for a new trial. The respondent's pro se exceptions to the hearing panel's and hearing board's findings of fact and recommendations encompassed twenty-eight pages and included nine exhibits. The respondent's opening brief in this court was thirty pages in length and included another thirteen exhibits. The disciplinary counsel responded in a twenty-four page answer brief and the briefs were concluded by the respondent's eighteen page pro se reply brief which included yet an additional seven exhibits. The extended records, pleadings, and briefs which are before us reflect the animosity that the respondent has for his former wife's counsel.

The respondent has charged his wife's lawyer with serious misconduct and has made harsh, scandalous, and bitter accusations against her and the manner in which she represented his wife in the custody, maintenance, and property settlement hearings. No good purpose would be served by repeating all of the allegations that were made by the respondent against his wife's lawyer. Accordingly, the allegations and claims of the respondent will be set forth only to the extent that it is necessary to review the findings and recommendations of the hearing board.

## II.

### The Dissolution Proceedings

In March 1985, the respondent's wife, Teresa Barnthouse, filed a petition for dissolution of marriage in the Denver District Court. Thereafter, pursuant to the respondent's motion, venue was changed to Arapahoe County. The order for temporary custody and support of respondent's wife and two sons was agreed to in a stipulation. Prior to a pretrial conference, the respondent's initial lawyer moved to withdraw and sought a continuance. The trial judge granted the motion to withdraw at a pretrial conference on the condition that the respondent secure other counsel who would be prepared for a scheduled hearing in December, and denied the motion for a continuance.

Thereafter respondent's dilatory acts and motions for the sole purpose of delay postponed the determination of the maintenance and property settlement issues. The respondent's first financial affidavit was filed in June, 1985, and reflected income of $5,000 per month from his employment with Mizel Petrol Resources and $343 per month from the National Guard. A number of allegations, which were later proven to be true, were made regarding the respondent's understatement of his assets and his secreting and disposing of marital property during the course of the dissolution proceedings.

In July 1985, respondent terminated his employment with Mizel Petrol Resources and started his own private practice with a negative cash flow despite his obligations to pay his wife support and maintenance. On November 6, 1985, the trial judge found that respondent voluntarily terminated his employment with Mizel Petrol Resources, that he had spent $132,028 since January 1985, and that he had the ability to support his family. On May 22, 1986, the trial judge found respondent's decision to en-

gage in private practice to be a disinclination to work. Four contempt citations were filed to obtain compliance with the court's support orders. The respondent failed to pay support and accumulated substantial arrearages. In addition, he refused to sign the titles to automobiles awarded to his wife by the court and to execute a quit claim deed to transfer the marital home to his wife as ordered by the court.

In an effort to delay and harass the guardian *ad litem* for his sons, he threatened to file a grievance against the guardian *ad litem* and caused a motion to remove the guardian *ad litem* to be filed. Many of the allegations in the motion for removal of the guardian *ad litem* had been previously determined and found to be without merit. This did not, however, discourage the respondent from filing the same motion four more times. A new motion making the same allegations to remove the guardian *ad litem* was filed before the permanent orders hearing. The same allegations were raised again during the permanent orders hearing and again in respondent's motion for a new trial. The motions for removal and the motion for a new trial were all denied. Finally, when the court ordered the motion to remove the guardian *ad litem* to be sealed, the respondent filed an amended motion to remove the guardian *ad litem* asserting basically the same grounds as he had before. Nearly all of the motions were duplicative of other motions that had been previously determined by the court and served no purpose other than to harass his wife and her counsel.

## III.

### Findings and Conclusions

#### A.

DR 1–102(A)(5) provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice. The hearing board found that the respondent violated the disciplinary rule and that the charge had been proven by clear and convincing evidence. The hearing board found that the motion to remove the guardian *ad litem* was prejudicial to the administration of justice. Paragraph 10 of that motion alleged that: "[t]he Respondent is in the process of filing a grievance against the Guardian for her perjury and other conduct." In addressing paragraph 10 of the motion to remove the guardian *ad litem*, the board stated:

> Said paragraph, the board finds, violates Colorado Rules of Civil Procedure 241.- 24(a) in that said revelation was a violation of the confidentiality imposed by said rule. Further, two members of the board found that the filing of that pleading with that paragraph contained therein violates the spirit of Ethics Opinion 56 and was in fact the threatening of the filing of a grievance in an attempt to obtain a civil gain.

#### B.

DR 7–102(A)(1) requires representation of a client within the bounds of the law and provides: "In his representation of a client, a lawyer shall not: file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another." The hearing board unanimously found that the respondent violated DR 7–102(A)(1) and specifically found that the respondent's motion for a new trial, which was seventy-five pages in length was replete with inappropriate, malicious, and scandalous accusations against the guardian *ad litem* and the respondent's former wife's attorney, as well as similar references to two witnesses who testified in the case. Among the statements contained in the motion for new trial which violated DR 7–102(A)(1) was the respondent's assertion that the

> guardian *ad litem* perjured herself in the temporary orders hearing and in the final orders hearing ... the court seemed to approach the bench on the first day of the temporary orders with an unexplained predisposition against the respondent, possibly generated from the perjured paper work previously filed by [wife's] attorney ... they deliberately misled the court ... due to the hostile

and unreasonable approach and request generated by [wife's] attorney ... whose gay-rights radical/militant approach was injected constantly in the case.... compounding the problem were the hostile, mud slinging tactics utilized by [my wife's] attorney in the Temporary Hearing.... [my wife's] attorney called ... a witness. [The witness] ... never met with or talked with respondent, yet she proceeded unprofessionally to testify against the respondent, and throw more rude and raw irrelevant issues....

As further examples of the violation of DR 7–102(A)(1) the board cites the following pleadings filed by respondent during the course of the divorce action:

2) The Writ of Prohibition filed by the respondent which is Exhibit "B" in this case. It states in part, "[T]he respondent Judge should remove herself if even a hue or hint of unethical, biased, prejudiced or similar circumstance arises. Such circumstances have clearly arisen." Page 15, paragraph d, states [that there was] "... impeached perjury of the Guardian *ad litem* left unaddressed by the court."

3) The respondent's response to petitioner's motion for continuance of the temporary restraining order found at Exhibit "A" page 230 and specifically at page 232, paragraph[s] 10 and 11 ... states, "this incident was an example of [their] militant-activist mentality and their ridiculous machinations in handling a dissolution case ... [My wife's] attorney carries her angry-activist political machinations into dissolution cases ... her personal fears and mental state of mind should not be allowed to cause restriction or friskings or temporary restraining orders to be issued on innocent citizens."

4) Respondent's Reply to Response of Guardian to Respondent's Motion to Amend, and Reply to Petitioner's Affidavit which is Exhibit "Q" in this case. On page 2 of said motion the respondent states "this misconduct needs no special legal authority to underscore *its* unethical, biased, prejudicial, erroneous and deceitful nature." At page 3 the respondent states, "someone who has lied is expected to be troubled by the detail of truth, and the detailed transcript quotes of witnesses who impeached her (guardian *ad litem*) witnesses whose reality revealed that the guardian had lied in open court."

The board stated that these are only samples of numerous places in the pleadings wherein the respondent violated Disciplinary Rule 7–102(A)(1).

### C.

DR 7–106(A) proscribes trial conduct of the type involved here and states: "A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling." The hearing board unanimously found that the respondent violated DR 7–106(A) on a number of occasions.

Among a number of orders issued by the trial court on May 22, 1986, was a protective order sealing custody evaluation reports and other exhibits. The respondent claimed he did not receive a copy of the protective order until June 1, 1986, a Sunday. The guardian *ad litem* testified that she received her copy of the order before May 30, 1986. Respondent said that one of the reasons he had not received his copy was that he was out of town. Yet he was able to file a motion for a contempt citation and expedited order on May 30, 1986. The hearing board concluded that the respondent's testimony that he had not received the order until June 1 was not credible and that he violated the order when he filed a motion that contained the result of a psychiatric test that was given to his wife.

When the permanent orders were issued in April 1986, the court granted the respondent's wife certain motor vehicles and the family residence as her sole and separate property, and ordered the respondent to transfer title and execute deeds to accomplish that purpose. The respondent failed to act within the thirty-day period set by the court and refused to comply because he

had appealed the final orders. After repeated requests that the respondent comply with the order, the respondent's wife was forced to file a motion and obtain an order directing the clerk of the court to transfer the titles to the automobiles and the family residence. The transfers were made by the clerk prior to the respondent's motion for a stay of execution in the court of appeals. The court of appeals granted a stay on the condition that the respondent provide a $100,000 supersedeas bond. Respondent failed to post a bond and the stay never went into effect. The hearing board found that the respondent violated the court's order to execute the deed and titles in compliance with the permanent orders in the dissolution proceedings.

In May 1986, the trial court entered an order striking certain portions of the respondent's pleadings and ordered that the respondent cease and desist from using pleadings to malign the attorneys and witnesses in the case. The hearing board concluded that the respondent's motions for issuance of a temporary injunction and for issuance of a contempt citation and expedited orders violated the court's order to cease and desist and contained statements maligning the parties and the attorneys in the case. Respondent's violation of the trial court's cease and desist order also violated DR 7–106(A).

In September 1986, the respondent filed an additional motion to remove the guardian *ad litem* and in the motion again stated that the guardian *ad litem* perjured herself. The respondent's motion violated the court's order and DR 7–106(A).

### D.

DR 1–102(A)(4) forbids a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and DR 7–102(A)(5) requires a lawyer to represent a client within the bounds of the law and prohibits a lawyer from knowingly making a false statement of law or fact. The board unanimously found that the respondent violated both disciplinary rules and specifically found that the respondent made false statements on his financial affidavits in the dissolution of marriage proceedings. In June 1985, and again in October 1985, the respondent stated in his affidavit that he had no cash on hand and later revised the statement to reflect that he had $20 in cash, when in fact he had substantial cash in his possession. In January 1985, three months prior to the filing of the dissolution proceedings, the respondent withdrew $92,000 in cash from various accounts which constituted part of the marital assets. He kept the funds in the form of cashier checks, certified checks, and certificates of deposit. According to his accountant's testimony and the respondent's exhibits, on or about August 30, 1985, the respondent transferred $7,000 from one account to another and additionally paid $4,000 in legal fees and $2,000 in other miscellaneous expenses, for a total of $13,-000.

In his August 15, 1985, financial affidavit, however, respondent indicated that he had only $8,367.18 in his checking account. From the records the hearing board concluded that he had at least $5,000 to $6,000 more in cash assets than the $20 he indicated in his affidavit. The hearing board also discredited the respondent's testimony that he had spent the entire $92,000 prior to the filing of a financial affidavit in June 1985. From the testimony of the respondent and his accountant, and from the record produced, the hearing board concluded that the respondent had put large sums of cash into bank accounts that were traceable to the $92,000 that he withdrew in January. When the respondent testified, he characterized the cashier checks and certificates of deposit as cash, but when answering his interrogatories regarding cash on hand, he claimed that the cashier checks, certified checks, and/or certificates of deposit were not cash.

The hearing board found that the respondent violated the disciplinary rules in his financial affidavit answering question 16(h). Question 16(h) called for the disclosure of any pension, profit sharing or retirement fund held by the respondent. Respondent replied by indicating that he had none of these types of funds. An exhibit

signed by the respondent, however, requested a cash distribution of approximately $13,000 held in the Consolidated Thrift Investment Plan, indicating that the respondent had, in fact, a form of pension, profit sharing, or retirement fund. Respondent admitted that he received $56,000 from the cashing out of a thrift investment plan, but claims that it was not a transaction involving the sale of the stocks or bonds. The board concluded that the respondent violated DR 1–102(A)(1), DR 1–102(A)(5), DR 7–102(A)(1), DR 7–102(A)(5), DR 7–106(A)(1), and DR 1–102(A)(4), and C.R.C.P. 241.6 and 241.24. *See People v. May,* 745 P.2d 218 (Colo.1987); *People v. Madrid,* 700 P.2d 558 (Colo.1985); *People v. Kane,* 655 P.2d 390 (Colo.1982).

### E.

### *Sanctions*

The hearing board found sections 6.12, 6.22, and 6.32 of the American Bar Association Standards for Imposing Lawyer Sanctions to be applicable to this case. Said sections provide:

6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.32 Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.

We agree that section 6.12, 6.22. and 6.32 support suspension as the proper sanction. Suspension is also appropriate when a lawyer knowingly violates a court order. It is also proper as a sanction when a lawyer interferes directly with the legal process. The court in *In re Vincenti,* 92 N.J. 591, 458 A.2d 1268 (1983), imposed a one year suspension until further order of the court when a lawyer made repeated insulting and degrading verbal attacks on the judge and substantially interfered with the orderly trial process. The *Vincenti* court was influenced by the numerous instances of impropriety that pervaded the proceeding over a period of three months. In *People v. Kane,* 655 P.2d 390 (Colo.1982), we suspended a lawyer for three years for his professional misconduct in representing himself in a divorce proceeding.

In determining aggravation and mitigation, the hearing board relied on sections 9.2 and 9.3 of the American Bar Association Standards for Imposing Lawyer Sanctions. Sections 9.2 and 9.3 state:

9.2 **Aggravation**

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations, or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

### 9.3 Mitigation

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical or mental disability or impairment;

(i) delay in disciplinary proceedings;

(j) interim rehabilitation;

(k) imposition of other penalties or sanctions;

(*l*) remorse;

(m) remoteness of prior offenses.

In this case the respondent had no prior disciplinary violations which is a mitigating circumstance. Apart from the absence of prior discipline, the only other mitigating factor is the personal and emotional problems that resulted from the dissolution of the marriage. The aggravating factors are (1) dishonest or selfish motives; (2) the pattern of continued misconduct; (3) multiple offenses; and (4) a refusal to acknowledge the wrongful nature of his conduct.

Accordingly, the respondent, William Joseph Barnthouse, is suspended from the practice of law for one year and one day, effective thirty days after May 30, 1989, the date that this opinion is to issue. C.R. C.P. 241.21. He may not be reinstated until the costs of these proceedings are paid and respondent establishes that he is emotionally and physically fit to practice law. The respondent is ordered to pay the costs of these proceedings in the amount of $1,645.34 to the Grievance Committee, 600–17th Street, Suite 500–S, Denver, Colorado 80202–5435 within sixty days.