**The PEOPLE of the State of Colorado, Complainant**

v.

**Alison MAYNARD, Respondent.**

**No. 08PDJ059.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 30, 2009.

Commencing on January 27, 2009, a Hearing Board composed of RICHARD P. HOLME and JAMES L. COX, JR., both members of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), held a three-day hearing pursuant to C.R.C.P. 251.18. April M. Seekamp appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and Gregory G. Sapakoff appeared on behalf of Alison Maynard ("Respondent"). The Hearing Board now issues the following "Amended Opinion and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."[1]

## AMENDED OPINION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

### I. *ISSUE*

A lawyer acts unethically if she knowingly disobeys a court order or engages in a pattern of conduct prejudicial to the administration of justice. Respondent's clients retained her after losing a lawsuit, which had become a final judgment. Thereafter, Respondent repetitively challenged the judgment collaterally in the state, federal, and water courts, filed a frivolous lawsuit and motions, and ignored a judge's order to stop her collateral attacks or face sanctions. What, if any, is the appropriate sanction?

### II. *SUMMARY*

After careful consideration of the evidence presented and the arguments of counsel, the Hearing Board **finds and concludes** there is clear and convincing evidence that Respondent violated the Colorado Rules of Professional Conduct as set forth below:

- **CLAIM I,** Colo. RPC 1.1 (A lawyer shall provide competent representation to a client). By failing to undertake even the most rudimentary analysis of the facts and legal requirements necessary to bring a RICO suit Respondent failed to competently represent her clients.

- **CLAIM II,** Colo. RPC 3.1 (A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for extension, modification or reversal of existing law). By filing a RICO lawsuit without an elementary analysis of the facts and law necessary to allege a violation of RICO and essentially ignoring a state court final judgment, which was contrary to allegations in her RICO suit that the defendants had engaged in fraud, Respondent filed a frivolous lawsuit. Furthermore, because Respondent failed to undertake an elementary analysis of the facts and law necessary to file a RICO suit, she could not make a good faith argument on the merits or support a good faith argument for an extension, modification, or reversal of existing law.

- **CLAIM III,** Colo. RPC 8.4(d) (A lawyer shall not engage in conduct that is prejudicial to the administration of justice). Respondent initiated a lawsuit without minimally appropriate preparation and investigation of the factual and legal predicates for doing so. Respondent's misconduct caused the federal court to expend valuable time and resources and was prejudicial to the administration of justice.

---

1. The "Concurring Opinion of Hearing Board Member Richard P. Holme" follows this opinion.

- **CLAIM IV,** Colo. RPC 3.1. (A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for extension, modification or reversal of existing law). Respondent's motion to recuse Judge Lass was essentially denied twice, not appealed, and filed on the eve of trial a third time without substantial change. We find Respondent's tortured efforts to derail the scheduled trial by filing a third motion to recuse demonstrates clear and convincing evidence that it was frivolous.

- **CLAIM V,** Colo. RPC 3.2 (A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client). The record demonstrates that Respondent's repeated filings of essentially duplicative arguments and thereby extensively delayed the proceedings.

- **CLAIM VI,** Colo. RPC 3.5(c) (A lawyer shall not engage in conduct intended to disrupt a tribunal). By electronically filing a third motion to recuse on the eve of trial, Respondent delayed it without substantial purpose. Given the background and her numerous attempts to recuse Judge Lass, we find that Respondent filed the motion as a tactic to delay the proceedings and preserve a *lis pendens* that she had obtained in order to frustrate her opponent's efforts to sell property.

- **CLAIM VII,** Colo. RPC 8.4(d). (A lawyer shall not engage in conduct that is prejudicial to the administration of justice). Respondent's third motion to recuse Judge Lass, electronically filed on the eve of trial, was a misguided *tactic* designed to delay the proceedings and was prejudicial to the administration of justice.

- **CLAIM VIII,** Colo. RPC 3.4(c) (A lawyer shall not knowingly disobey an obligation under the rules of a tribunal). By arguing issues precluded by a prior final judgment and in spite of Judge Ossola's written order not to do so, Respondent acted knowingly and disobeyed an order of the court.

- **CLAIM IX,** Colo. RPC 8.4(d). (A lawyer shall not engage in conduct that is prejudicial to the administration of justice). Respondent's refusal to obey Judge Ossola's order to cease arguing issues resolved in 99CV277 was detrimental to the administration of justice.

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE (1) YEAR.**

## III. *PROCEDURAL HISTORY*

On June 19, 2008, the People filed a Complaint alleging nine separate violations of the Colorado Rules of Professional Conduct. Respondent filed an Answer on August 4, 2008. Both parties filed motions for summary judgment, which the PDJ denied. On September 4, 2008, the PDJ held an At–Issue Conference and a three-day hearing commenced on January 27, 2009.

## IV. *FINDINGS OF MATERIAL FACT*

The Hearing Board finds that the following facts have been established by clear and convincing evidence.[2]

### Jurisdiction

Respondent has taken and subscribed the oath of admission, was admitted to the Bar of this Colorado Supreme Court on May 20, 1987, and is registered upon the official records, Attorney Registration No. 16561. She is therefore subject to the jurisdiction of the Hearing Board in these disciplinary proceedings pursuant to C.R.C.P. 251.1(a). Respondent's registered business address is P.O. Box 22135, Denver, Colorado 80222.

### Overview

Before retaining Respondent, her clients lost a declaratory judgment in state court, case number 99CV277, which became a final

---

**2.** The parties stipulated to exhibits numbered 1 through 51, except for exhibits 2, 18, 19, 42, 43, 44, 45, 47, 48, 50 and 51. The stipulated facts have been incorporated into the Hearing Board's findings of fact.

order when they failed to appeal it. Thereafter, these defendants refused to cooperate with the prevailing parties in finalizing a settlement agreement as ordered by the court. The former defendants in the declaratory judgment case then retained Respondent to represent them.

Without any recourse in state court and relying heavily on her clients' wishes to continue litigation, Respondent filed suits in the state, federal, and water courts, and collaterally attacked the state court's jurisdiction and final order in 99CV277. In the first of these suits, Respondent alleged, without essential preparation or legal foundation and in contravention of the state court's order in 99CV277, that the prevailing parties and others engaged in a criminal conspiracy, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Colorado Organized Crime Control Act ("COCCA"), and deprived her clients of their water rights. Ultimately, Respondent knowingly disobeyed a court order to stop her collateral attacks on the judgment in 99CV277 or face sanctions.

### Background to Dispute Between Respondent's Clients and their Homeowners Association

Spring Creek Ranch ("SCR"), real property located in Summit County, was initially developed in the 1980s. As part of a planned unit development ("PUD"), the developer built seven homes in Phase I and applied for, and received, a water decree in case number 80CW504, which included a proposed Phase II, an undeveloped portion of SCR.[3] This decree allowed the lot owners, a total of 300 contemplated units on the 6000 acres of property, to use 175 acre-feet of water per year when SCR was "at full development." However, before the developer undertook the development of Phase II, he defaulted on the mortgage for SCR. At that point, the mortgage holder foreclosed on the SCR development, which included the undeveloped portion, Phase II.

The mortgage holder then sold part of the undeveloped land to Nelson and Catherine Lane. At the same time, the mortgage holder, the Lanes, individual lot owners in SCR,

and the SCR Homeowners Association ("HOA") signed a settlement agreement ("1989 Settlement Agreement") in May 1989. Under the agreement, the Lanes purchased SCR from the mortgage holder "excluding" Phase I, the community well thereon, and certain real property deeded to SCR HOA. The Lanes' portion of the property was re-zoned as open ranch space and the Summit County Board of Commissioners then passed a resolution making SCR HOA responsible for the PUD in Phase I.

Shortly after signing the 1989 Settlement Agreement, the parties discovered that the well the developer had dug in Phase I had not been properly certified. In 1993, the SCR HOA went to water court, case number 93CW213, in an effort to resolve issues concerning the well and assure a sufficient water supply for the development.

In about 1997, a dispute between two factions of the then existing seven Phase I lot owners led to the selection of a new board of directors for the SCR HOA. The three former board members became the protesting lot owners and later hired Respondent to serve as their counsel from this point forward.

In 1999, the Lanes sold part of their property to Elk Dance Colorado, LLC ("Elk Dance" or "the adjacent land owner"). Elk Dance took possession of the land and the water rights ostensibly allotted to the Lanes in the original augmentation plan (80CW504). In order to settle any questions about water use and rights issues amongst the parties, the new SCR HOA and Elk Dance proposed an addendum ("2000 Addendum") to the 1989 Settlement Agreement.

As part of the 2000 Addendum, Elk Dance agreed to provide Phase I lot owners up to 5.85 consumptive acre feet of water from Elk Dance's water if the Phase I lot owners could not obtain water from a contracted source, Green Mountain Reservoir, as provided in a 40-year contract the SCR HOA entered into with the U.S. Bureau of Reclamation, Department of Interior in 1993. The protesting lot owners refused to sign the Addendum,

---

**3.** *See* the People's Exhibit 1, page 5.

claiming that they, not Elk Dance, owned the water rights decreed in 80CW504.

### The District Court Rules in Favor of SCR HOA, Case No. 99CV277

In 1999, after the SCR HOA could not obtain the protesting lot owners' consent to go forward with the agreements with the Lanes and Elk Dance, the SCR HOA sought declaratory relief in the Summit County District Court, case number 99CV277.[4]

In 99CV277, the SCR HOA board members petitioned the district court to declare that they were the duly elected board and they could lawfully administer the business of SCR on behalf of the HOA's members, including finalizing the settlement agreement and addendum thereto with Elk Dance. The protesting lot owners entered an appearance in 99CV277 and opposed the declaratory relief sought by the SCR HOA.

In their answer, the protesting lot owners asserted counterclaims, alleging that they, not the adjacent land owner, had been granted water rights under the augmentation plan approved in the water court in 1980, case number 80CW504, and that the proposed addendum took away those vested water rights. They also alleged that the new SCR HOA board was not duly elected and could not act on their behalf; therefore, any agreement the SCR HOA entered into with Elk Dance was void and unenforceable.

On January 28, 2002, after holding a three-day trial on these issues in November 2001, the Honorable David Lass entered a detailed 18–page order in 99CV277, which included the following findings and conclusions of law: [5]

- The new SCR HOA directors "were the duly elected members of the Board of Directors of SCR HOA at all relevant times."

- The SCR HOA "[was] vested with the powers and duties necessary to conduct, manage and control the affairs and business of the HOA, including the transfer of property and property rights." Further, Judge Lass found that the SCR HOA's right to control and manage the SCR HOA included the right to enter into a settlement agreement with adjacent landowners and to "proceed with Water Court case 93CW213" in order to implement the settlement agreement provisions affecting water use issues involving SCR and Elk Dance.

- Judge Lass specifically noted that the protesting lot owners did not allege that the new SCR HOA board breached a fiduciary duty to them or that they exceeded their authority, but rather the protesting lot owners alleged that the SCR HOA had no authority over them.[6]

- Judge Lass specifically found that, as members of the SCR HOA, the protesting lot owners "[were] bound by the actions of the duly elected Board of Directors." Specifically, Judge Lass ordered the protesting members to abide by a "2000 Addendum Agreement" that the SCR HOA negotiated with Elk Dance.

- Judge Lass also ordered each "Lot Owner" in the SCR HOA to sign the 2000 Addendum, and, if required by the Water Court in case number 93CW213, to sign the proposed decree as well as any other documents necessary to accomplish the purposes of the addendum.

- Judge Lass ruled that if any party, including the protesting lot owners, refused to sign necessary documents within ten (10) days of written demand by the HOA, the court would appoint the Clerk of the Combined Courts of Summit County to execute the documents on their behalf pursuant to C.R.C.P. 70.

---

4. The Lanes entered into an agreement with SCR in the 1989 Settlement Agreement when they sold to Elk Dance. The agreement released the Lanes from liability for delivering any water to the SCR other than providing sufficient water to the SCR for in-house domestic use for fourteen homes in SCR. As part of the agreement, Elk Dance agreed to transfer 300 acres to the seven lot owners from the undeveloped portion of the first parcel.

5. *See* the People's Complaint at ¶ 6 and Respondent's Answer at ¶ 6.

6. *See* the People's Exhibit 1, p. 9.

- Finally, Judge Lass specifically denied the defendants' counterclaim for partition or division of the water rights they asserted. Judge Lass found that the evidence demonstrated that the protesting lot owners did *not* own water rights under a previously approved augmentation plan in 80CW504. Judge Lass ordered the SCR HOA to implement the delivery of water as contemplated by the 1989 Settlement Agreement, as well as any decree subsequently entered by the Water Court in case 93CW213.[7]

The defendants, the protesting lot owners, did not appeal Judge Lass' order. Nevertheless, they refused to sign the 2000 Addendum to the 1989 Settlement Agreement as Judge Lass ordered. A year after Judge Lass entered his order the protesting lot owners hired Respondent to represent them in their continuing dispute with the SCR HOA and Elk Dance.

### SCR HOA Files a Motion Under C.R.C.P. 70 in 99CV277

Meanwhile, the SCR HOA was concerned about their obligations under the addendum, the court's order to implement water delivery as provided in the 1989 Settlement Agreement, and the potential exposure the SCR HOA might encounter if they failed to abide by their agreement with Elk Dance.[8]

On February 22, 2002, in response to the protesting lot owners' recalcitrance, the SCR HOA went back to Judge Lass and requested relief as provided in C.R.C.P. 70. Specifically, they asked Judge Lass to appoint the Clerk of Combined Courts in Summit County to sign documents on behalf of the lot owners who refused to do so.

On January 23, 2003, Judge Lass granted the SCR HOA's motion to appoint the clerk to execute a declaration of covenants as provided in the specific performance portion of his declaratory judgment order in 99CV277.[9] Neither party appealed this order.[10]

### Respondent Moves Judge Lass to Vacate its Final Order in 99CV277

On January 31, 2003, nearly a year after Judge Lass issued his final order, Respondent entered her appearance in case number 99CV277. On April 14, 2003, Respondent, representing the protesting lot owners, filed a motion requesting that Judge Lass vacate a portion of his order granting declaratory relief to the SCR HOA in 99CV277.[11]

In her motion to vacate, Respondent alleged that Judge Lass had *lacked jurisdiction* because the plaintiffs had committed fraud and fraud upon the court in 99CV277. In his order dated June 19, 2003, denying Respondent's motion to vacate, Judge Lass found that Respondent had failed to prove that the SCR HOA had fraudulently procured the declaratory relief from the court.

### Respondent Appeals Judge Lass' Order Denying Relief from Judgment

Respondent appealed Judge Lass' order denying Rule 60(b) relief from a final judgment to the Colorado Court of Appeals; they affirmed the order in an unpublished opinion on August 26, 2004.[12]

Nevertheless, the Court of Appeals noted that Respondent moved to amend her notice of appeal to include Judge Lass' final judgment granting declaratory relief in 99CV277, alleging that Judge Lass *lacked jurisdiction* to enter an order in favor of the SCR HOA. The Court of Appeals denied Respondent's motion to amend her notice of appeal and specifically addressed Respondent's argument that Judge Lass lacked jurisdiction to grant declaratory relief to the SCR HOA. The Court of Appeals stated:

> And, contrary to [Respondent's] contention, a judgment does not perpetually remain vulnerable to attack on jurisdictional grounds. A party may not collaterally attack a final judgment when, as here, the

---

7. *See* the People's Exhibit 1, pp. 17–18.

8. *See* the testimony of Bob Swensen.

9. *See* the People's Exhibit 2, entry for 1/31/03.

10. *See* the People's Complaint at ¶ 7 and Respondent's Answer at ¶ 7.

11. *See* the People's Exhibit 4.

12. *See* Respondent's Exhibit R.

party had the opportunity to challenge subject matter jurisdiction during the original action.

This should not have been new law to the Respondent as the Court of Appeals cited two of its prior reported opinions, a United States Supreme Court decision and the Restatement (Second) of Judgments.

### Respondent Files a COCCA Lawsuit, 03CV126

In the meantime, on May 2, 2003, shortly after Judge Lass signed an order appointing the clerk to execute documents, Respondent filed a lawsuit in Summit County District Court, case number 03CV126, alleging that the SCR HOA, their lawyers, Elk Dance, and others, violated COCCA. In an email to one of her clients, she wrote that this COCCA pleading was going to be very "slapdash".[13] Respondent alleged that the named defendants engaged in malicious prosecution, fraud, recording false documents, and state RICO violations. Among the allegations Respondent made are the following:

- Defendants have an agreement to accomplish an unlawful goal, which is to divest the plaintiffs of their property (the plan for augmentation and associated water rights) and convert it to their own use.
- The defendants have, through a pattern of racketeering activity or through the collection of an unlawful debt, knowingly acquired or maintained, directly or indirectly, an interest in or control of an enterprise or real property.
- The defendants against whom this claim is brought (SCR HOA) have, at varying times, functioned in the capacity of director or officer of SCR. They had a fiduciary duty to act in the best interest of the SCR, as a whole, including a fiduciary duty to the plaintiffs.[14]

Finally, Respondent asked the court to hold elections for the SCR HOA, but to exclude the existing board members, some of whom Judge Lass had found to be duly elected. Respondent also asked the court to void any documents that had been recorded by or benefited any of the defendants, which affected title to the plaintiffs' property, including their water rights. Respondent did not serve any of the named defendants in 03CV126.

At the same time Respondent filed her COCCA suit, she filed a notice of *lis pendens* to frustrate Elk Dance's property. On June 27, 2003, nearly two months after she filed this COCCA suit, Respondent withdrew it.

### Respondent Files a RICO Lawsuit, 03–M–1183

On June 27, 2003, the same day Respondent withdrew her COCCA claims in state court, she filed a federal RICO suit, 03–M–1183, against the same defendants alleging many of the same claims she had alleged in state court. Respondent decided to file her case in federal court because she thought it would be a better forum than the state court in Summit County where her clients had lost in 99CV277.[15] Even though six weeks had past since Respondent filed her COCCA claims, she still had not taken any action to properly plead what she described as a "slapdash" COCCA complaint. Respondent's RICO complaint tracked, nearly verbatim, the allegations she made in the COCCA case she had dismissed earlier the same day.[16] Like the COCCA suit she had filed in state court, Respondent did not give the defendants notice of its filing nor did she serve them with the complaint.

Although Respondent is an experienced litigator, she had never filed a RICO suit in the past. Respondent filed a *lis pendens*, which included 6000 acres of land, much of it owned by Elk Dance. While Respondent maintained a research folder that contained reported cases on the RICO statute, she did

---

13. *See* the People's Exhibit 46.

14. For many of the reasons explained in connection with the pleading of Respondent's subsequent RICO complaint, this complaint was wholly inadequate. *See Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo.App.1996)

(federal law is instructive in interpreting COCCA).

15. *See* the People's Exhibit 7.

16. *See* the People's Exhibits 5 and 7, Respondent's COCCA and RICO pleadings.

not update these cases before filing the RICO suit and clearly did not even review the cases she had already collected in her research folder. A review of the pleadings shows Respondent failed to allege with specificity the allegations of fraud as required by F.R.C.P. 9(b).[17]

At the time she filed 03–M–1183 Respondent knew that Judge Lass had authorized the SCR HOA to enter into contracts and conduct business on behalf of the SCR HOA.[18] Further, Respondent knew that Judge Lass denied her motion to vacate, which alleged that the SCR HOA and others had fraudulently obtained a declaratory judgment against her clients.[19] Yet she urged Judge Matsch to allow her to continue litigating her RICO complaint, one in which she alleged that the SCR HOA board members were not duly elected and engaged in fraud against her clients in obtaining a declaratory judgment in state court.

Indeed, Judge Lass had ruled that the SCR HOA was duly authorized to act on behalf of the SCR HOA's members, including Respondent's clients. He also ruled Respondent failed to prove that the SCR HOA committed a fraud upon the court when the acting directors obtained a declaratory judgment in their favor. The Hearing Board finds Respondent's persistence in litigating these resolved matters in federal court misguided. The Hearing Board further finds Respondent's claim that she was acting zealous in protecting and representing her clients, a hollow assertion based upon the record leading up to this filing.

Furthermore, the Hearing Board finds that neither the rules of procedure nor the Colorado Rules of Professional Conduct justify Respondent's conduct as she argues. While the rules of procedure allow an amendment after filing a complaint, this rule, standing alone, does not justify Respondent's conduct in filing a RICO claim without addressing legal and factual issues that would legally and factually preclude filing such a claim. F.R.C.P. 1 states, "[the federal civil rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Respondent's conduct was entirely inconsistent with these guiding procedural principles.

Finally, the Preamble to the Colorado Rules of Professional Conduct Scope states, "a lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice." To be sure, Respondent represented her clients, but in doing so, she discounted her responsibilities as an officer of the court. Those responsibilities fundamentally call upon a lawyer to respect the rule of law. Here the issues Respondent raised in her RICO claim had been resolved yet Respondent persisted in using and abusing the legal process in an apparent effort to undo a final order her clients would not honor.

In her federal complaint alleging RICO violations, Respondent prayed for declaratory relief, including the removal of the acting directors of the SCR HOA and a finding that her clients owned water rights in the SCR development. Respondent knew that Judge Lass had ruled to the contrary on both of these issues in 99CV277 and that his order was a final judgment.[20] Furthermore, when questioned in these proceedings about the *Rooker–Feldman* doctrine applicable in federal courts, Respondent did not know whether it applied to her filing in 03–M–1183.[21]

---

17. Vague and conclusory allegations of fraud do not satisfy the specificity requirements of Federal Rule Civil Procedure 9(b). *See Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989) (holding that Rule 9(b) requires that RICO predicate acts based on fraud must be pled with specificity to provide clear notice of the factual basis of the predicate acts to defendants). See discussion below at page 18.

18. *See* the People's Exhibit 1.

19. *See* the People's Exhibit 4.

20. *See* the People's Exhibit 1, Judge Lass' order in 99CV277.

21. *See Lance v. Dennis*, 546 U.S. 459, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (Doctrine generally prohibits the lower federal courts from effectively exercising appellate review over state court decisions). This evidence was not admitted to prove an independent violation of the Colorado Rules of Professional Conduct, but as further

When Respondent filed the RICO suit against the SCR HOA, its lawyers, and Elk Dance, she did not serve them with the complaint. Nevertheless, one of the named defendants in Respondent's RICO suit, Victor Boog, a lawyer who represented the SCR HOA, discovered a reference to the RICO filing when he reviewed Respondent's pleadings in a related water court case. Respondent testified that she had intended to amend her RICO complaint as provided in F.R.C.P. 15. However, as discussed below, that does not excuse her filing of the improper complaint in the first place.

### Respondent Responds to Motion for Summary Judgment in 03–M–1183

On August 8, 2003, Mr. Boog filed a motion for summary judgment in the federal court, 03–M–1183, citing Judge Lass' order in 99CV277. Thereafter, Respondent filed three separate motions for an extension to respond to motions for summary judgment filed by defendants named in 03–M–1183. On October 30, 2003, Respondent filed a motion to stay the federal proceedings in 03–M–1183 pending the outcome of water court litigation in 93CW213.

On November 14, 2003, Judge Matsch held a status conference and asked Respondent directly why she filed the RICO complaint, Respondent answered that "we're here under RICO because there is a criminal enterprise which has formed and has as it's intention the deprivation of my client's, to separate them from their property interests in order to use those property interests for the development of adjacent property, which is owned by Elk Dance."

While alleging that the SCR HOA engaged in a criminal conspiracy, she admitted she had drafted the pleading in 03–M–1183 before she was "able to do much investigation." Five months earlier, on May 1, 2003, she

emailed one of her clients before filing her COCCA complaint, a virtual template of the RICO complaint, and stated that she would have to *"draft some kind of suit this afternoon* (emphasis added) just to file it tomorrow. . . . It is going to be very slapdash, but I can amend it after it's filed as a matter of right. . . . I just have to have a case number to put in the notice of *lis pendens."* [22]

The Hearing Board finds that these statements reveal Respondent's inept and misguided view of her ethical obligation to prepare these complaints competently and within the Colorado Rules of Professional Conduct. During these proceedings Respondent also testified that she believed letters sent by the SCR HOA to her clients threatening to file liens for failure to pay home owner's dues and other assessments constituted mail fraud. Respondent also alleged, without stating facts upon which she based her allegations, that Elk Dance was connected to "organized crime." [23] This attitude about litigation is aptly characterized as "shoot first and aim later." [24]

At the status conference on November 13, 2003, Judge Matsch told Respondent that he would not accept jurisdiction on the state claims alleged in 03–M–1183 but would give Respondent thirty days to amend her complaint. She did not do so.

On January 27, 2004, Judge Matsch dismissed 03–M–1183 without prejudice and released the *lis pendens* after giving Respondent ample time to amend her pleadings as she requested. Judge Matsch did not rule on Mr. Boog's motion for summary judgment and contrary to Respondent's assertions in these proceedings, Judge Matsch did not approve her complaint as proper or adequate.[25] However, Judge Matsch did not assess attorney fees as requested by the defendants because he determined that litigating the

---

evidence of Respondent's lack of competent representation.

22. *See* the People's Exhibit 46.

23. *See* the People's Exhibit 7, pp. 117–18.

24. *Brooks v. Bank of Boulder*, 891 F.Supp. 1469 (D.Colo.1995).

25. In any event, we address ethical issues, not substantive or procedure ones in this opinion. *See United States v. Colorado Supreme Court*, 189 F.3d 1281, 1287–89 (10th Cir.1999) wherein the 10th Circuit addressed a challenge to a disciplinary rule, 3.8, wherein the government claimed the rule was contrary to established substantive and procedural law.

matter would have unduly delayed the proceedings.

### Respondent Files Motion to Reopen 03CV126 and Motion to Recuse

On October 9, 2003, after dismissing her COCCA complaint against the SCR HOA, its lawyers, and Elk Dance, Respondent filed a motion to *reopen* 03CV126.[26] Judge Lass granted this motion. Respondent filed an amended complaint and asked the court for a preliminary injunction against the SCR HOA for alleged breach of fiduciary duties owed to her clients occurring after Judge Lass' final order in 99CV277. Respondent again alleged that the defendants had engaged in a scheme to defraud her clients of their property.

On January 17, 2006, Respondent filed her first motion to recuse Judge Lass in 03CV126. This motion, like the one Respondent filed in 99CV277 over two years earlier, alleged bias in favor of the SCR HOA and their lawyers. Judge Lass denied this first motion to recuse in 03CV126 on February 22, 2006.[27]

Judge Lass scheduled the matter for trial on November 21, 2006. Respondent filed her second motion to recuse in 03CV126 on November 20, 2006, and a related pleading captioned "One More Thing" on November 20, 2006, at 10:41 PM the night before trial. This last pleading, "One More Thing," was preceded and followed by numerous other pleadings, including a pleading captioned "Penultimate Renewed Motion to Recuse." These filings constituted Respondent's efforts to recuse Judge Lass in 03CV126.[28]

Respondent filed her second motion to recuse knowing that Judge Lass would be required to act on it before going forward with the trial. The motion contained many of the same allegations she had made in her first motion to recuse Judge Lass in 99CV277. Respondent made numerous statements about Judge Lass that he characterized as disrespectful of the court, and which the panel finds to be inappropriate in any court filing and entirely unprofessional.[29] Respondent's series of motions included allegations of Judge Lass "jiggering timelines; splitting and combining causes of action; last-minute changes to benefit the Defendants or hurt Homeowners; denying Homeowners due process; lying about the record; arbitrarily keeping Homeowners' evidence out; acting as the SCR HOA's private advocate and attorney."[30]

Respondent testified that following consultation with her clients and receiving their "authorization," she filed a motion to recuse on the eve of trial. Respondent acknowledged that she and her clients were concerned that Judge Lass would release their notice of *lis pendens* because he intended to hear the equitable claims in 03CV126 before hearing substantive claims. In a detailed twenty page ruling dated August 15, 2007, Judge Lass denied Respondent's motion to recuse. After addressing each of the allegations Respondent made in her numerous pleadings, Judge Lass commented as follows:

> The court also observes that many of the allegations relate to a former case which was concluded years ago and that allegations relating to the within case were not raised until the very eve of trial. Arguably these grounds were not asserted in the requisite timely fashion and may constitute a waiver thereof. Further, the inflammatory language used and the repeated efforts to recuse the judge in this

26. Because voluntarily dismissing a case under C.R.C.P. 41(a) results in a dismissal without prejudice, it is unclear how she could "reopen" a dismissed case.

27. *See* the People's Exhibit 27, p. 2, Judge Lass' order denying Respondent's second motion to recuse in 03CV126.

28. *See* the People's Exhibit 27.

29. The People did not allege violations of the Colorado Rules of Professional conduct with regard to these remarks in their Complaint against Respondent. The People apparently exercised their discretion and decided not to charge Respondent with ethical violations for the language she used after considering the First Amendment issues implicated therein. *See* the "Concurring Opinion of Hearing Board Member Richard P. Holme," which addresses in detail Respondent's numerous disrespectful comments about Judge Lass.

30. *See* the People's complaint and Respondent's answer, ¶ 81.

and the former case, can only lead one to believe that plaintiffs hope to obtain a different judge who might be more receptive to their arguments, or as a substitute for an appeal of prior rulings. Such attempted manipulation of the legal system is not to be condoned.[31]

### Respondent Files a Protest to the SCR HOA's Petition, 93CW213

The SCR HOA attempted to obtain approval of the augmentation plan for water use as provided in Judge Lass' order in 99CV277. On June 30, 2003, Respondent filed a protest against the SCR HOA's petition in water court, 93CW213. On August 5, 2004, the Honorable Thomas Ossola entered an order cautioning Respondent that he would not allow her to litigate issues resolved in 99CV277, including the SCR HOA's authority to act on behalf of its members. Judge Ossola also cautioned Respondent that he would sanction her if she persisted in litigating matters that had already been resolved in 99CV277.

During the water court proceedings, Respondent repeatedly attempted to challenge Judge Lass' jurisdiction to rule on water rights issues in 99CV277 and her client's water rights, despite Judge Ossola's warnings not to do so.[32]

In an order dated September 13, 2005, Judge Ossola denied Respondents second motion for summary judgment. In this order, Judge Ossola specifically stated, "In July, 2004 this court found that the judgment in Summit County District Court (Judge Lass' order in 99CV277) acts as a bar to issues concerning the authority of the association's board of directors, the validity of the agreement and the addendum and ownership of the rights in 80CW504."[33] Because Respondent continued to argue these resolved issues at trial in these matters, Judge Ossola entered an order on November 4, 2004, at the conclusion of 93CW213, sanctioning Respondent and her clients for "stubbornly" litigating issues precluded by Judge Lass' order in 99CV277.

### Testimony of Respondent and Character Witnesses

Throughout these proceedings, Respondent has maintained that she was trying to right the injustice her clients suffered at the hands of the SCR HOA. She believes that the SCR HOA and its lawyers, with the assistance of the judicial system, engaged in a conspiracy to deprive her clients of water rights. Respondent also testified that the SCR HOA unlawfully assessed dues and fees against her clients in order to file liens, foreclose on their property, and force them out of SCR. She insists that in aggressively pursuing the SCR HOA and others, she acted ethically and zealously in defending her clients' rights, while abiding by their wishes.

Respondent called several character witnesses who testified that she is a principled lawyer and that she often takes on public interest cases that might not otherwise be litigated.

## V. CONCLUSIONS OF LAW—SUBSTANTIVE ALLEGATIONS

The Hearing Board finds clear and convincing evidence that Respondent violated the following Colorado Rules of Professional Conduct.

### Respondent Violated Colo. RPC 1.1 as Alleged in Claim I (a lawyer shall provide competent representation to a client)

■ The comments to Colo. RPC 1.1 state that competence *includes* thoroughness and preparation, inquiry and analysis of the factual and legal elements of a legal matter, and

---

**31.** *See* the People's Exhibit 27 at 19.

**32.** *See* the People's Exhibit 36, transcript of the trial in 93CV213 before Judge Ossola. The transcript demonstrates that Respondent politely acknowledged Judge Ossola's admonitions, but then at the first opportunity repeatedly raised issues resolved in 99CV277. *See also Spring Creek Ranchers Assoc. v. McNichols*, 165 P.3d

244, 246 (Colo.2007) (affirming Judge Ossola's award of attorney fees against Respondent for bringing or defending an action "that lacked substantial justification" under C.R.S. § 13–17–102(4)).

**33.** *See* the People's Exhibit 35.

preparation commensurate with the complexity of the legal issue at hand.[34] The more complex an issue, the greater the preparation required of the lawyer. The Hearing Board finds that the filing of a RICO lawsuit is a complex legal undertaking, which requires a heightened analysis of both factual and legal issues. While Respondent's pleadings in 03–M–1183 recite some of the elements of a RICO claim, there is little or no factual specificity to support her allegation that the SCR HOA, the adjacent landowner, and the lawyers representing them engaged in a continuing criminal enterprise. These pleadings were conclusory.

Judge Matsch told Respondent during a status conference in 03–M–1183, "it's a pretty serious matter to accuse the defendants of crime."[35] We agree. Here, Respondent alleged that the SCR HOA, the adjacent landowner, and lawyers representing them had engaged in a scheme to defraud her clients out of property lawfully belonging to them. Respondent admits that she drafted her complaint without a thorough investigation.[36] Even though she had a right to amend the complaint before the defendants answered it pursuant to F.R.C.P. 15(a), this rule did not relieve Respondent of her ethical responsibilities under Colo. RPC 1.1 in filing the RICO suit.

On May 1, 2003, just before filing the COCCA suit, Respondent sent a letter via e-mail to one of her clients stating that she would file a case on their behalf, but that it would be "very slapdash." She stated that the purpose of the new case was "[j]ust have to have a case number to put in the notice of *lis pendens.*"[37] The pleading that followed this missive was the COCCA complaint, which was largely the template for the subsequent RICO case. We find Respondent drafted both in haste and without the elementary analysis of law and fact necessary for bringing such a complex undertaking.

Respondent never amended her RICO complaint, and Judge Matsch ultimately dismissed the case. With this dismissal, defendants did not have an opportunity to file an answer and their motion for summary judgment was not resolved. Had Respondent filed an amended complaint, Judge Matsch would have undoubtedly been in a position to rule on defendant's motion for summary judgment.

Respondent's primary defense to the charge of lack of competence is that although not reflected in the complaint filed in federal court, she in fact had done the necessary factual and legal research to justify filing the RICO case and was intending, when she filed it, to amend the complaint to expand on the factual grounds for the claim based on information in her possession at the time of the initial filing.

When Respondent filed her federal court action in 2003, her experience in the federal court had generally been quite limited (she testified that she had tried one case there several years earlier). She had never filed or participated in a RICO case, although she had performed some legal research on RICO in 1996. During her disciplinary hearing, Respondent introduced the file of legal research materials she had reviewed before filing her RICO case in 2003.[38]

As to the factual basis for her RICO claim, Respondent contended that she was aware of the facts supporting her charges when she filed the federal case, because they were the same facts presented at a three-day preliminary injunction hearing conducted in the re-filed state court case during November and December 2003.[39] Respondent further contended that her awareness of these supporting facts is the relevant issue, and not the strength of her case.

As to the factual predicate, Respondent offered hundreds of pages of "facts" in the

---

34. *See In re Fisher*, 202 P.3d 1186, 1194 (Colo. 2009).

35. *See* the People's Exhibit 14, p. 17, line 24.

36. *See* the People's Exhibit 14, p. 15, lines 6 and 7.

37. *See* the People's Exhibit 46.

38. *See* Respondent's Exhibit K. Respondent testified that her actual file contained full copies of the cases, but she only included the first page or two to avoid unduly lengthening the exhibit.

39. *See* Respondent's Exhibits G, H and J.

form of trial transcripts. However, Respondent never answered the question of whether this simply represented a large pile of unrelated facts or whether the facts revealed in the hearing provided all of the specific facts necessary to support a RICO claim. What is clear is that Respondent wholly failed to plead sufficient facts in her complaint to establish the necessary factual predicate for a RICO claim.

More telling as to her lack of competence to bring a RICO claim is the lack of meaningful legal research. Respondent had been practicing law for 16 years when she filed her RICO suit, yet none of her research included cases decided between 1996 and June 2003. Respondent acknowledged her familiarity with the requirements of F.R.C.P. 9(b), which requires pleading fraud with particularity. Nevertheless, her ten-claim federal case also included a common law fraud claim, which she failed to plead with particularity.

Respondent's research file reflects little investigation of RICO cases from the Tenth Circuit Court of Appeals. Merely as two examples, there is no indication that she reviewed the Tenth Circuit's long-standing decision in *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir.1989), which held that because of the need to give defendants adequate notice, the existence of treble damages and the threat to the defendants' reputations by virtue of allegations that they are racketeers, the predicate acts supporting a RICO case must be pleaded with particularity, especially where the RICO claim is the only basis for federal jurisdiction, as it was in Respondent's complaint. Likewise, Respondent did not find or note *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir.1992), which held that plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity; and a plaintiff alleging fraud must know what the claim is when the plaintiff files it.[40]

Respondent also ignored perhaps the most important case she had found in her 1996 research and included in her research file.[41] In *Brooks v. Bank of Boulder*, 891 F.Supp. 1469 (D.Colo.1995), Judge Kane carefully reviewed and summarized the pleading standards for RICO cases in the Tenth Circuit and the District of Colorado, by noting that RICO claims include eight separate critical elements each of which must be pled with particularity under Rule 9(b). Judge Kane held:

> In accordance with Rule 9(b), Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof."
>
> *The purpose of Rule 9(b) is to inhibit the filing of complaints as a pretext to discover unknown wrongs, to protect the defendant's reputation, and to give notice to the defendant regarding the complained of conduct. A plaintiff alleging fraud must know what the claim is at the time the complaint is filed.*

*Id.* at 1476–1477 (emphasis added). Finally, Judge Kane noted that:

> A charge of racketeering, with its implications of links to organized crime [and attendant consequences to a person's reputation and goodwill], should not be easier to make than accusations of fraud. RICO should not be construed to give a pleader license to bully and intimidate nor to fire salvos from a loose cannon. Irresponsible or inadequately considered allegations should be met with severe sanctions pursuant to Rule 11, F.R.Civ.P. In filing such serious allegations one may not shoot first and aim later.

*Id.* at 1477 (first set of brackets in original; numerous citations omitted; emphasis added).

Notwithstanding Respondent's possession of this opinion and its clear warnings, Respondent ignored it and proceeded to file the RICO case in violation of almost every pleading standard revealed by her research. Re-

---

**40.** Respondent should have been aware of both these decisions because both are cited in the *Brooks v. Bank of Boulder* case, a case found in her file.

**41.** *See* Respondent's Exhibit K at pp. 200 and 205–206.

spondent seems to have been much more intent on preserving her *lis pendens* than learning about or following applicable law in filing her federal case. Such action violates Colo. RPC 1.1.

**Respondent Violated Colo. RPC 3.1 as Alleged in Claim II (a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous)**

█ By filing a RICO lawsuit without a rudimentary analysis of the facts or legal requirements necessary to allege such a violation, Respondent filed a frivolous lawsuit in violation of Colo. RPC 3.1. In addition, because she failed to competently prepare, Respondent could not and did not demonstrate a good faith argument on the merits or a good faith argument for an extension, modification, or reversal of existing law in pleadings in 03–M–1183.

Finally, Respondent's RICO suit is frivolous because she lacked the legal and factual predicates to bring such a claim. "A claim is substantially frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense." [42]

**Respondent Violated Colo. RPC 8.4(d), as Alleged in Claim III (a lawyer shall not engage in conduct that is prejudicial to the administration of justice)**

█ For the reasons stated above, Respondent violated Colo. RPC 8.4(d). Although Judge Matsch ultimately dismissed 03–M–1183, the defendants incurred substantial legal fees and emotional distress as a result of defending this ill-advised lawsuit. Given the seriousness of the allegations Respondent presented in her complaint, the federal court likely felt reluctant to dismiss the case without providing Respondent ample opportunity to develop her case and amend her complaint. She never amended her complaint, and now claims that she simply decided not to proceed because Judge Matsch had elected not to accept jurisdiction on the state claims. Nevertheless, the clear and convincing evidence is that Respondent did little to prepare before filing a complex lawsuit in federal court. By filing a complex lawsuit without the most elementary preparation, Respondent necessarily filed a frivolous lawsuit.

Although Respondent had an ethical duty to vigorously represent her clients, she could not abuse the legal system in order to assist them. By initiating a lawsuit that necessarily required proof of continuing racketeering activity and predicate acts of mail fraud, without a basis for doing so, Respondent engaged in conduct prejudicial to the administration of justice.

**Respondent Violated Colo. RPC 3.1, as Alleged in Claim IV (a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, unless there is a good faith argument for extension, modification or reversal of existing law)**

█ Respondent's second motion to recuse Judge Lass in 03CV126 was essentially denied twice, not appealed, and filed without substantial change a third time on the eve of trial. Respondent's tortured efforts to derail the scheduled trial by filing a motion to recuse under these circumstances demonstrates clear and convincing evidence that the motion was frivolous and in violation of Colo. RPC 3.1. [43]

**Respondent Violated Colo. RPC 3.2, as Alleged in Claim V (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client)**

█ In case number 03CV126, the parties filed over 400 pleadings. To be certain, Respondent did not file all of them. However, the record demonstrates that Respondent

---

**42.** *See City of Aurora ex rel. Utility Enterprise v. Colorado State Engineer,* 105 P.3d 595, 620 (Colo. 2005) citing *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984).

**43.** *See Goebel v. Benton,* 830 P.2d 995 (Colo. 1992) (Motion and supporting affidavits in a motion to recuse are insufficient if they only allege opinions or conclusions); *Estate of Binford v. Gibson,* 839 P.2d 508 (Colo.App.1992) (Motion filed two years after facts known is untimely).

filed repetitive motions that delayed the proceedings, many of which were frivolous. Furthermore, she established a pattern and practice of filing matters at the last possible minute as a tactic to delay proceedings.

Respondent filed her initial complaint in the state court, 03CV126 raising COCCA and fraud claims, the day before a scheduled auction related to her clients' property due to their failure to pay homeowners association assessments. She also filed a *lis pendens* to frustrate that auction. However, she did not serve the complaint or notify anyone that it had been filed, even though the racketeering complaint named many of the parties and counsel of record involved in the still pending 99CV227 case.

Eight days after she received a ruling denying her motion to set aside the January 23, 2003 order in 99CV277 for fraud on the court, Respondent voluntarily dismissed 03CV126, dropped the *lis pendens*, filed the federal court RICO case repeating many of the same grounds, and filed a new *lis pendens*. Respondent again did not serve or notify any of the named defendants, which still included the counsel of record representing her opponents in 99CV277. While asking for extensions of time to amend her RICO case in federal court, she moved to "reopen" her case in 03CV126, the day before a planned meeting of the defendants.[44]

At 5:28 AM on March 11, 2004, immediately prior to a hearing Judge Lass had scheduled in 99CV277, Respondent filed a motion to recuse Judge Lass.[45] The motion does not contain a Rule 121 § 1–15(8) certification stating that she had notified opposing counsel of the proposed motion and had discussed it with them. After the court denied that motion, the Colorado Supreme Court rejected Respondent's Rule 21 petition for a rule to show cause.

44. *See* the People's Exhibit 13.

45. *See* the People's Exhibit 20 and Exhibit 21 at 3.

46. *See* the People's Exhibit 3.

47. *See* the People's Exhibit 23.

48. *See* the People's Exhibit 25.

On December 15, 2005, Respondent was given a thirty day notice that 03CV126 (her COCCA case) would be dismissed for lack of prosecution.[46] On January 17, 2006 (the thirtieth day after the final weekend and holiday), she filed another motion to recuse the Judge Lass, this time in 03CV126.[47] This motion also does not contain a Rule 121 § 1–15(8) certification.

With the trial in 03CV126 scheduled to commence on November 21, 2006, Respondent filed another "Verified Renewed Motion to Recuse, Stating Additional Grounds" at 10:41 PM on November 20, 2006.[48] This motion also did not contain a Rule 121 § 1–15(8) certification. Respondent followed up this motion with a "Penultimate Renewed Motion to Recuse" filed on February 23, 2007.[49] This evidence demonstrates that Respondent violated Colo. RPC 3.2.

### Respondent Violated Colo. RPC 3.5(c) as Alleged in Claim VI (a lawyer shall not engage in conduct intended to disrupt a tribunal)

■ By electronically filing a motion to recuse on the eve of trial, Respondent delayed the trial and the resolution of the equitable issues in 03CV126. Given the background detailed in Judge Lass' order denying the second motion to recuse in 03CV126, the Hearing Board finds that Respondent's purpose in filing the motion was to delay a final determination whether Respondent's *lis pendens* should be released. Respondent therefore violated Colo. RPC 3.5(c).[50]

### Respondent Violated Colo. RPC 8.4(d) as Alleged in Claim VII (a lawyer shall not engage in conduct that is prejudicial to the administration of justice)

When Respondent violated Colo. RPC 3.5(c) as alleged in Claim VI above, she also

49. *See* the People's Exhibit 26. The motion again does not contain a Rule 121 § 1–15(8) certification of conferral with opposing counsel.

50. *See* the People's Exhibit 27, p. 5, Order Denying Plaintiffs' Second and Third Motions to Recuse. In his order, Judge Lass details the history of 03CV126 and Respondent's repeated efforts to recuse him.

violated Colo. RPC 8.4(d) by engaging in conduct prejudicial to the administration of justice as alleged in Claim VII.

### Respondent Violated Colo. RPC 3.4(c) as Alleged in Claim VIII (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal)

Judge Ossola issued an order in advance of trial in 93CW213, which clearly precluded Respondent from litigating issues precluded by Judge Lass' order in 99CV277. Before issuing this order, Respondent had attempted on numerous occasions to challenge Judge Lass' order in Judge Ossola's court and other courts. In addition, the Colorado Court of Appeals had affirmed Judge Lass' denial of Respondent's motion to reconsider his ruling in 99CV277. The Court of Appeals decision addressed Respondent's claim that Judge Lass' order in 99CV277 was subject to collateral attack. Ultimately, the Colorado Supreme Court decided the same.[51] Although Respondent did not have the benefit of the Colorado Supreme Court's decision in *Elk Dance* at the time, she was well aware of Judge Ossola's written order and the admonition of the Colorado Court of Appeals that her efforts in continuing to collaterally attack a final judgment were not legally permitted.

At some point, litigating and repeatedly arguing an issue that is legally precluded becomes a violation of ethical standards, especially when a lawyer is given ample notice. Although Respondent refuses to believe that Judge Lass has provided a fair and impartial hearing to her clients, the issues addressed in his order are final. Respect for the courts and our system of justice rely upon the rule of law. Respondent's conduct demonstrates that she is incapable of recognizing that her dedication to clients must be balanced with her duties to the court and legal system. Disobeying Judge Ossola's order given the tortured history of this litigation demonstrates that Respondent knowingly disobeyed a court order. The Colorado Supreme Court has reached the same conclusion.[52]

While Respondent argued that no valid obligation existed to follow his order, the clear and convincing evidence is that her argument was not made in good faith. Good faith is "a state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or seek unconscionable advantage."[53]

Respondent's conduct was not faithful to her duties and responsibilities as an officer of the court. Further, taking into consideration the nearly five years of litigation Respondent's cases have absorbed on legally precluded issues, the Hearing Board is satisfied that Respondent's conduct was objectively unreasonable. Finally, the Hearing Board finds that Respondent's efforts were "knowing" and for the purpose of obtaining a tactical advantage.

### Respondent Violated Colo. RPC 8.4(d) as Alleged in Claim IX (a lawyer shall not engage in conduct that is prejudicial to the administration of justice)

In the water court, Respondent once again demonstrated a pattern of conduct appropriately described as "stubbornly litigious." Her conduct before Judge Ossola demonstrates an intractable stance about the issues Judge Lass had decided years earlier. Had this been the first time Respondent demonstrated this inflexibility, it would not be so troubling. Her knowing disregard of a court's orders was inimical to the just, speedy and inexpensive resolution of client matters. Given the multiple opportunities the court gave Respondent to desist from arguing legally precluded matters, her conduct was prejudicial to the administration of justice.

## VI. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 &

---

**51.** *See In the Matter of the Application for Water Rights of Elk Dance Colorado,* 139 P.3d 660 (Colo.2006).

**52.** *See Spring Creek Ranchers Ass'n. v. McNichols,* 165 P.3d 244, 247 (Colo.2007).

**53.** *See Black's Law Dictionary* 713 (8th ed.2004).

Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the facts and circumstances of each case.

### Applicable ABA Standards

The Hearing Board considers the following standard the most appropriate given our finding that Respondent abused the legal process, which we consider the gravamen of her ethical violations.

ABA *Standard* 6.22 states in the absence of aggravating or mitigating circumstances and application of ABA *Standard* 3.0:

> Suspension is generally appropriate when a lawyer *knowingly* violates a court order or rule, and there is injury or potential injury to a client or party, or interference or potential interference with a legal proceeding (emphasis added).

However, before imposing a sanction after a finding of lawyer misconduct, ABA *Standard* 3.0 directs the Hearing Board to first consider the following factors to determine whether the presumed sanction is appropriate:

- The duty violated;
- The lawyer's mental state;
- The actual or potential injury caused by the misconduct; and
- The existence of aggravating or mitigating factors.

### A. THE DUTY VIOLATED

We begin with the proposition that members of the legal profession must adhere to the highest moral and ethical standards and respect the rule of law. These standards apply regardless of motive. Here, Respondent defends her conduct by stating that she was fighting for the rights of her clients and that Judge Lass was simply wrong. However, the Hearing Board finds that Judges Lass, Matsch, and Ossola all gave Respon-

dent broad latitude in pursuing the rights of her clients.

In addition, there is point at which pursuing a client's interests must defer to the judicial process and the rule of law. Without such deference, respect for the process and rule of law is lost. As Judge Ossola pointed out in his order imposing sanctions against Respondent and her clients, Respondent would politely acknowledge the court's admonitions and return to the prohibited subject at a later time.

The Hearing Board believes Respondent's pattern of conduct demonstrates her intractable view that she and her clients are right and they are entitled to litigate these issues into perpetuity. While it may appear to Respondent that justice requires nothing less than a vigorous collateral attack to correct the actions she has perceived as prejudicing her clients, she has gone too far and has ignored long-established Colorado law to the contrary.

While a lawyer has a duty to diligently represent a client, such representation must be within the law and the Colorado Rules of Professional Conduct. Respondent's subjective belief that she and her clients are victims of a criminal conspiracy and racketeering does not relieve her of her duties to the court and the legal system, which all lawyers must honor.[54]

### B. THE LAWYER'S MENTAL STATE

The Hearing Board finds that Respondent acted *negligently* in filing a RICO suit without thoroughly researching the facts and law necessary to make such a claim as addressed in Claims I–III. We find that she acted *knowingly* with respect to all of her actions in 99CV277, 03CV126, and 93CV213.

Respondent testified that she had planned to file her RICO claim and later amend it as provided in F.R.C.P. 15. She prepared it hastily and admits that she had insufficient time to investigate it. Under the circum-

---

**54.** To some extent Respondent eschewed her obligation to provide her clients with independent and disinterested advice. It seems emblematic of this issue that Respondent swore in her Verified Renewed Motion to Recuse that the judge has made findings for the defendants "against *us*," or "*We* filed her affidavit and motion to recuse...." (*See* the People's Exhibit 25 at 1 and 5 ¶ g (emphasis added)).

stances, Respondent failed to heed a substantial risk that her suit lacked the necessary factual and legal basis for filing such a suit. Furthermore, this failure was a deviation from the standard of care that a reasonable lawyer would exercise under the circumstances.

 In all other matters, Respondent acted knowingly; that is, she was aware of her conduct. However, she did not have a conscious objective to produce a specific result. It appear that Respondent believed she was acting as an ethical advocate on behalf of her clients and did not have the premeditated intent to disobey court orders, procedures, or substantive law.

## C. THE ACTUAL OR POTENTIAL INJURY

 Respondent caused injury to our system of justice and the legal profession when she filed a patently improper suit in federal court, disrupted proceedings by filing a motion to recuse on the eve of trial, and when she "politely" yet knowingly disregarded Judge Ossola's written admonition not to argue issues resolved by Judge Lass in 99CV277. When considering all of Respondent's actions, the Hearing Board finds that she not only injured the legal system by abusing its processes, but also caused financial loss and emotional distress to those forced to defend frivolous claims against them.

## D. AGGRAVATING AND MITIGATING FACTORS

### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

 Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction.

### Pattern of Misconduct and Multiple Offenses—9.22(c) and (d)

Respondent knew that Judge Lass' final order was not subject to appeal. When he denied her motion to reconsider his ruling in favor of the SCR HOA, she was left without a direct method of attacking a judgment that her clients refused to obey. From that day forward, Respondent sought indirect ways of attacking the judgment. Thus, she filed a RICO suit, a COCCA suit, and a protest in water court to the augmentation plan that the SCR HOA and the adjacent landowner wanted to implement. She also filed a *lis pendens*, based upon her frivolous lawsuits.

Throughout this process, Respondent asserted that Judge Lass did not have jurisdiction to enter an order against her clients and that the SCR HOA engaged in criminal conduct. Ultimately, she knowingly refused to obey Judge Ossola's order to stop litigating issues resolved by Judge Lass. What started out as an ill-advised and incompetent filing of a complex RICO claim turned out to be a knowing disregard of a judge's written admonition to stop litigating legally precluded issues. Examining the evidence as a whole, what emerges is a pattern of abusing the legal process followed by numerous attempts to delay or continue a decision on the merits of the factually and legally flimsy claims made by Respondent.

### Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g)

Respondent still believes she did the right thing by challenging the authority of Judge Lass and exposing criminal conduct on the part of the SCR HOA, the adjacent landowner, and the lawyers who represent them. Respondent's resolve in these matters prompted the PDJ to inquire during the hearing whether she intended to continue her quest to reverse Judge Lass' order in 99CV277, about which she was uncertain.

### Substantial Experience in the Practice of Law—9.22(i)

Respondent has practiced law for over twenty years in Colorado. During this time, she has worked as a deputy district attorney, an assistant attorney general, and a private practitioner specializing in public interest litigation. Respondent should have a better perspective on the proper balance between

the vigorous representation of clients and the duties all lawyers owe to the judicial system.

### 2. MATTERS IN MITIGATION, ABA STANDARD 9.3

Mitigating factors are any considerations or factors that may justify in a reduction in the degree of discipline to be imposed. The Hearing Board considered evidence of the following mitigating circumstances in deciding the appropriate sanction.

#### Absence of a Prior Disciplinary Record—9.32(b)

The Hearing Board finds an absence of a prior disciplinary record from the evidence presented in these proceedings.[55]

#### Cooperative Attitude Toward Proceedings—9.32(e)

Respondent demonstrated a cooperative attitude in these proceedings with both the People and the Hearing Board.

#### Imposition of Other Penalties or Sanctions—9.32(k)

Judge Ossola sanctioned Respondent and her clients for being "stubbornly litigious." This monetary sanction mitigates the sanction we impose, at least as to that part of her numerous violations.

#### Analysis Under Case Law and ABA Standards

Respondent, without rudimentary preparation, filed a RICO suit alleging federal crimes without a good faith basis for doing so. However, it is Respondent's repetitive motions to recuse Judge Lass that demonstrate her knowing attempts to frustrate and abuse the legal process. Respondent admits that most of the allegations she made against Judge Lass in her third attempt to recuse him had already been argued twice before. Knowing her third motion to recuse Judge Lass would likely be denied, she nevertheless filed her motion for the purpose of delaying the proceedings and maintaining a *lis pen-*

*dens* that frustrated the adjacent landowner's efforts to sell lots and develop his property.

We also find egregious Respondent's failure to obey Judge Ossola's written order. By the time Judge Ossola entered his order to cease litigating matters resolved in 99CV277, Respondent knew or should have known that Judge Lass' order was final and not the proper subject of further litigation.

■ A lawyer's refusal to follow a court's order is a serious matter calling for a substantial suspension and a re-determination of fitness to practice before being permitted to again to practice law in this jurisdiction. *In re Roose*, 69 P.3d 43, 49 (Colo.2003). While Respondent's conduct, like that in *Roose*, involved a knowing refusal to obey a court order, the Hearing Board finds Respondent's refusal less serious than *Roose's* because, as alleged in Claim VII, Respondent violated an order to stop arguing a precluded issue in water court with minimal negative impact on the proceeding.

### VII. CONCLUSION

■ As presented in these proceedings, Respondent has practiced for nearly twenty years without any evidence of prior misconduct. Nevertheless, her misconduct here demonstrates a pattern of stubborn litigiousness. While it is clear that Respondent believes that she is righteously pursuing truth and justice on behalf of her clients, she abandoned her duties to the courts, our system of justice, and the rule of law. A lawyer is more than a hired gun. By the time Judge Ossola entered a specific written order admonishing her not to further challenge Judge Lass' order in case number 99CV277, Respondent's cause had become an obsession.

Respondent's deliberate and intractable attempts to re-litigate issues already resolved in 99CV277 adversely affected the just, speedy, and inexpensive administration over the course of nearly five years. The Hearing Board finds that Respondent initially acted in an imprudent and incompetent manner in filing a frivolous lawsuit in a complicated

---

**55.** After the Hearing Board reached its decision on an appropriate sanction in this case, a one-year suspension, the Colorado Supreme Court affirmed a previous Hearing Board's decision and order suspending Respondent for conduct unrelated to this case.

area of law without adequate preparation. Ultimately, her over-zealousness on behalf of her clients resulted in her deliberate violation of a direct court order. While this case involves a complex and lengthy record, we address only those issues framed by the People's Complaint and the evidence received on those matters.[56]

We understand that admirers see Respondent as lawyer who has the highest ethics and takes on difficult cases, many times for little or no compensation. However, even crusaders for justice are not excused from abiding by the ethical standards that all lawyers must embrace. We have taken into consideration Respondent's subjective belief that she was fighting for clients who were being cheated out of valuable water and property rights; however, access to the courts has its limitations.[57] We trust Respondent will better balance her passionate advocacy and her duties to the court in the future.

Applying the ABA *Standards* and Colorado Supreme Court case law, and considering the aggravating and mitigating factors presented, the Hearing Board concludes that a one-year suspension is a sufficient sanction to protect the public and the administration of justice from further harm.[58]

## VIII. *ORDER*

The Hearing Board therefore **ORDERS**:

1. **ALISON MAYNARD,** Attorney Registration No. 16561, is hereby **SUSPENDED** from the practice of law for a period of **ONE (1) YEAR.** The suspension **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.

Concurring Opinion of Hearing Board Member RICHARD P. HOLME.

I agree with the findings and conclusions of the Presiding Disciplinary Judge in the case. Nonetheless, I concur separately because I feel the PDJ's Order does not and possibly cannot adequately convey the magnitude of my view of the impropriety of the Respondent's actions during her work on the litigation that lead to this proceeding. This is especially true with respect to the highly unprofessional rhetoric and vilification repeatedly employed by Respondent. The majority opinion declines to address this issue—see fn. 25, *supra*—but it is my view that the Supreme Court should speak to this issue in order to clarify what I hope is a misinterpretation of its decision in *In the Matter of Green,* 11 P.3d 1078 (Colo.2000), relating to the role of the First Amendment freedom of speech as it relates to attorney discipline.

In my 43 years of practicing law, while I have been confronted with "pit bull" and "Rambo" tactics and have been in numerous large and hotly disputed cases, I have never seen or been exposed to the amount and level of repeatedly intemperate, unprofessional and vitriolic language in briefs and other court filings, directed at the trial judge, opponents and opposing counsel as has occurred in Respondent's filings. If the Colorado judiciary wishes to advance or even maintain the current level of civility and professionalism among lawyers, it is respectfully submitted that the activity in this dispute should be a leading example of the type of conduct that should not be acceptable. Most of my concerns are addressed in the PDJ's opinion. However, in my view the charges and language used by Respondent in her court filings must be deemed and declared to be unacceptable.[1]

---

**56.** *See In the Matter of the Application for Water Rights of Elk Dance Colorado,* 139 P.3d 660 (Colo.2006), for a detailed history of the events that leading to Respondent's sanction in the water court for stubbornly litigating legally precluded issues resolved in 99CV277.

**57.** *See In re Karr,* 50 P.3d 910, 913 (Colo.2002).

**58.** *See In re Fischer,* 89 P.3d 817, 819 (Colo. 2004).

**1.** I concur with the other members of the Panel that a one-year suspension is appropriate in light of the *Green* decision. However, had *Green* allowed a finding that Colo. RPC 8.4(d) and (h)

I will limit my comments only to the most egregious example. This was Respondent's "Verified Renewed Motion to Recuse, Stating Additional Reasons," sworn to by Respondent (Exh. 25), which includes the following conclusory statements about the trial judge, Respondent's opponents and the opposing counsel of record in the litigation:

(p. 1) "In many of the court's legal rulings, he has acted as the advocate and attorney for the Defendants";

"Judge Lass has ... mischaracterized the record; and engaged in fraudulent legal reasoning";

(p. 2) "[He never mentions] the outrageous conspiracy and frauds perpetrated by the [defendants]";

"Lass"—using the judge's last name without being proceeded by "Judge," or "Mr." or even his first name—a lack of respect for the office of the court repeated frequently throughout the Motion;

"[A member of the law firm in which the judge had practiced 20 years earlier] having actively aided and abetted [a defendant] in his fraudulent takeover of the [homeowners association]";

(p. 3) "Lass's rulings against [Plaintiffs] have consistently ... demonstrated ill will";

"Repeatedly Judge Lass has mischaracterized, even lied about, the facts or the law";

(pp. 3–4) "Lass has jiggered timelines; ... made knowing mischaracterizations of the evidence or law; and supplied legal arguments to the Defendants, ... so he can rule for them, to enable them in ... their theft of [Plaintiffs' real property]";

(p. 4) "Judge Lass's last minute orders ... [were] grossly prejudicial to [Defendants]";

"[Opposing counsel's] statement was simply a lie";

"[The judge's ruling] shows a gross and reckless desire to see the [Defendants] succeed in their plans to steal [Plaintiffs'] properties";

"In later orders, however, Lass lied";

(p. 5) "[The judge bifurcated the trials of the equitable and legal issues] precisely in order to rule, himself, on the common factual issues, to effect issue preclusion. Although he said there would be a jury trial 'later,' he had no intention of actually holding a jury trial; there would be nothing for a jury to decide, at that point, This constituted a deliberate plan to swing the outcome to the [Defendants]";

"he is uninterested in applying the law fairly, or applying the law at all.";

"[the judge's ruling] was an outrageous abuse of power and discretion and clearly demonstrated favoritism towards the [Defendants]";

(p. 6) [The judge winked once at one of the defendants' counsel which] shows a revolting level of cronyism all by itself";

"Lass's favoritism towards the racketeers he installed as the directors of [the homeowners association]";

"There could be no more hideous and frightening a situation imaginable that the one this judge has created and put into effect by his biased rulings";

"Lass hurriedly re-severed [two cases] so the [Defendants] could be sure *and go get that property* [owned by her clients]" (emphasis in original);

(p. 7) "Yet Lass's false statement—this lie—served as his excuse for denying [Respondent's prior] motion to recuse. This shows his unhealthy level of interest in remaining as the judge in charge of deciding this case, and constitutes sheer willful misconduct";

(pp. 7–8) "[The prior unappealed and final judgment in 99CV277] has been so severely prejudicial to [Plaintiffs], so unspeakably harmful and outrageous in its effect, it can scarcely be summarized. Lass, in handing down that judgment, stripped my clients of their commonly and individually owned assets and granted those assets to a criminal racket which was formed for the express pur-

had been violated, a stronger sanction should have been imposed.

pose of acquiring these people's homes in this illegal fashion. In numerous instances in 99CV277, Judge Lass lied about the evidence before him";

- (p. 8) "Judge Lass has also made a number of outrageous evidentiary rulings"; "In his preposterous 66–page ruling denying the preliminary injunction, ... Lass several times knowingly and deliberately mischaracterized the evidence";

Respondent asserts that the foregoing rant is protected by the First Amendment right to free speech pursuant to the Colorado Supreme Court's ruling in *In the Matter of Green*, 11 P.3d 1078 (Colo.2000). If Respondent is correct in this assertion, the Supreme Court may as well abandon all efforts to insist on or even attempt to advance civility and professionalism; give up any pretense that lawyers are professionals and bound to a higher standard of conduct than that of mudslinging politicians; and warn judges and lawyers that their only protection from venomous attacks is to reciprocate in kind. I sincerely hope the Respondent is not correct.

In *Green* the Supreme Court reversed discipline against a lawyer for statements he included in motions to recuse a trial judge statements that the judge was a "racist and a bigot." Specifically, Green had listed and objected to statements the trial judge had made that Green was only "competent;" and noted that the first time Green and the judge had met was when the judge came into the court clerk's office, looked at Green (who is African–American) and asked the clerk to tell him the name of the attorney for whom Green was reviewing the court file. Thus, Green asserted in his motion, the judge had racially stereotyped Green as unable to be a lawyer because he was black. *Id.* at 1081–82. The Supreme Court ruled that Green could not be disciplined for violating the Rules of Professional Conduct because the materials he attached to his motion to recuse "disclose fully the facts upon which Green based his opinion." *Id.* at 1085. The Court emphasized that "We view Green's statements that the judge was a 'racist and a bigot' and having a 'bent of mind' as statements of opinion based upon fully disclosed and uncontested facts." *Id.* at 1086.

In contrast, here Respondent made numerous assertions for which there were no supporting facts disclosed. She made repetitive, unspecific and conclusory assertions such as:

"In *many of the court's legal rulings,* he has *acted as the advocate* and attorney for the Defendants";

"Judge Lass has ... *mischaracterized the record; and engaged in fraudulent legal reasoning*";

"supplied legal arguments to the Defendants, ... *so he can rule for them, to enable them in* ... *their theft* of [Plaintiffs' real property]";

"[The judge's ruling] shows a gross and reckless desire to see the [Defendants] succeed in their plans to steal [Plaintiffs'] properties";

"In later orders, however, Lass *lied*";

"[The judge bifurcated the trials of the equitable and legal issues] *precisely in order to rule,* himself, on the common factual issues, *to effect issue preclusion.* "[H]e had no intention of actually holding a jury trial; ... This constituted a deliberate plan to swing the outcome to the [Defendants]";

[The judge winked once at one of the defendants' counsel which] shows *a revolting level of cronyism* all by itself";

"There could be no more hideous and frightening a situation imaginable that the one this judge has created and put into effect by his biased rulings";

"Lass hurriedly re-severed [two cases] so the [Defendants] could be sure *and go get that property*" (emphasis in original);

"*In numerous instances* in 99CV277, Judge Lass *lied* about the evidence before him";

"Judge Lass has also made *a number of outrageous evidentiary rulings*";

"In his *preposterous* 66–page ruling denying the preliminary injunction, ... Lass *several times knowingly and deliberately mischaracterized the evidence.*"

(Emphasis added, except as otherwise noted.)

One can closely examine Respondent's motions and Judge Lass's rulings but still be left in the dark as to which supporting facts,

much less uncontroverted facts, Respondent is relying on to support this litany of vituperation.

If, under these circumstances, *Green* commands that the prosecution must still prove that each of these statements is false and that Respondent knew them to be false, it might as well invoke open season on judges and lawyers for any intemperate, unprofessional and unprincipled persons who have passed the bar. The reality is that disciplinary prosecutors have neither the resources nor the time to develop the facts necessary to meet that burden in a case such as this where the spewing of vitriol is so broadly gauged and endless. Nor is it likely that volunteer hearing panel members selected from the bar are going to have the time and inclination to sit through the weeks of testimony it would take to prove falsity of every statement and a respondent's knowledge of such falsity. Indeed, the disciplinary prosecutor candidly stated that because of *Green* her office concluded not to charge the Respondent with violations based on these voluminous attacks on the trial judge and opposing counsel.

The decision in *Green,* at least as argued by Respondent and applied by the Attorney Regulation Counsel, seems to negate the traditional and long-standing wisdom of cases such as *In the Matter of Lester T. Vincenti,* 92 N.J. 591, 458 A.2d 1268, 1275 (1983). In that case, the New Jersey Supreme Court said:

> As applied to courtroom decorum, ..., we think the principles extracted from the foregoing passage translate into a requirement that lawyers display a courteous and respectful attitude not only towards the court but towards opposing counsel, parties in the case, witnesses, court officers, clerks-in short, towards everyone and anyone who has anything to do with the legal process. Bullying and insults are no part of a lawyer's arsenal.
>
> The prohibition of our Disciplinary Rules against "undignified or discourteous conduct * * * degrading to a tribunal", DR 7–106(C)(6), is not for the sake of the presiding judge but for the sake of the office he or she holds. Respect for and confidence

in the judicial office are essential to the maintenance of any orderly system of justice. This is not to suggest that a lawyer should be other than vigorous, even persistent, in the presentation of a case; nor is it to overlook the reciprocal responsibility of courtesy and respect that the judge owes to the lawyer. Unless these respective obligations are scrupulously honored, a trial court will be inhibited in performing two essential tasks: sifting through conflicting versions of the facts to discover where the truth lies, and applying the correct legal principles to the facts as found. Under the best of circumstances these tasks are difficult; without an orderly environment they can be rendered impossible.

> Unless order is maintained in the courtroom and disruption prevented, reason cannot prevail and constitutional rights to liberty, freedom and equality under law cannot be protected. The dignity, decorum and courtesy [that] have traditionally characterized the courts of civilized nations are not empty formalities. They are essential to an atmosphere in which justice can be done. [*Code of Trial Conduct* § 17 (American College of Trial Lawyers 1983).]

Moreover, the present understanding of *Green* undercuts the Colorado Supreme Court's position in *People v. Barnthouse,* 775 P.2d 545, 550 (Colo.1989), which cited *Vincenti* favorably. In *Barnthouse* the respondent had filed a 75–page motion for new trial which was:

> [R]eplete with inappropriate, malicious, and scandalous accusations against the guardian *ad litem* and the respondent's former wife's attorney, as well as similar references to two witnesses who testified in the case. Among the statements contained in the motion for new trial which violated DR 7–102(A)(1) was the respondent's assertion that the "guardian *ad litem* perjured herself in the temporary orders hearing and in the final orders hearing ... the court seemed to approach the bench on the first day of the temporary orders with an unexplained predisposition against the respondent, possibly generated from the perjured pa-

per work previously filed by [wife's] attorney...."

(*Id.* at 547.) Here, Respondent's claims of lying were made about the *judge*.

The Colorado Supreme Court held that suspension of one's right to practice law:

> [I]s also proper as a sanction when a lawyer interferes directly with the legal process. The court in *In re Vincenti*, 92 N.J. 591, 458 A.2d 1268 (1983), imposed a one year suspension until further order of the court when a lawyer made repeated insulting and degrading verbal attacks on the judge and substantially interfered with the orderly trial process. The *Vincenti* court was influenced by the numerous instances

of impropriety that pervaded the proceeding over a period of three months.

(*Id.* at 550.) Here, Respondent's conduct lasted over a period of several years!

Thus, I strongly urge the Supreme Court to clarify *Green* and reiterate that conduct such as the foregoing is absolutely unacceptable, unprofessional and a violation of the lawyers' ethical obligations under at least Colo. RPC 8.4(d) and (h).[2]

---

2. Indeed, my view is that the Supreme Court should specifically authorize and even instruct trial judges who receive filings with gratuitous and unprofessional obloquy to stop reading them, strike the filings and return them to counsel with instructions promptly to file amended filings with the unprofessional language entirely removed before they will be considered, and to certify that the offending lawyer's client will not be charged any fees for the revised filings.